## Fatzinger v. DeLong

*J. L. Weirbach,* for plaintiff.
*L. M. Stanberg,* for defendants.

HENNINGER, P. J., July 30, 1956.—Plaintiff brought this petition for a declaratory judgment to determine whether plaintiff was bound by the terms of an agreement entered into between him, Ernest C. DeLong and five other employes of Office Utilities, Inc., whereby he agreed, upon termination of his employment with Office Utilities, Inc., that: ". . . he will not for the period of three (3) years after severance of employment with the COMPANY, regardless of the reason for said severance, engage in, be connected with, work for, or be associated with, directly or indirectly, any business located within a radius of twenty-five (25) miles from Sixth and Hamilton Streets, Allen-

town, Lehigh County, Pennsylvania, which is in competition with the business of the COMPANY."

An answer was filed by respondents and testimony was taken. The court makes the following

*Findings of Fact*

1. Office Utilities, Inc., is a Pennsylvania corporation with offices at 26 North Sixth Street, Allentown, engaged in the business of selling office supplies and equipment, and Ernest C. DeLong is its president and principal stockholder.

2. The said business was started about 21 years ago, approximately 1935, as an individual proprietorship owned by the said Ernest C. DeLong, and later was incorporated in 1948.

3. Petitioner is 33 years old. He came to work for defendants about 15 years ago in 1940 directly from high school at the age of 18 years and worked continuously for this employer until December 16, 1955, excepting for a period of approximately three years which he spent in the Army, and another lapse of a few months. He started as a stock boy and truck driver. As he learned the business he was given increasing responsibilities and was advanced to store clerk and salesman and finally, about 1952, to the position of store manager and purchasing agent.

4. As store manager and purchasing agent, he had full responsibility for all store sales and all buying and purchasing, excepting furniture items and machines. He had full responsibility for the pricing of merchandise. Approximately 60 to 70 percent of the company's business went over his desk and was subject to his personal care and attention. He also conducted sales meetings. In addition, he had access to all the customers' lists and knew all the buying habits of purchasing agents who were customers of employer's business. He had access to all the confidential files,

that is, the billings, sources of supply and all detailed information concerning the operation of the business, both buying and selling. Petitioner, through his many years of service, had established special relations with employer's suppliers and the purchasing agents of employer's customers.

5. When petitioner came to work for defendants he had no trade; his only job, excepting for the period of a few months and his service with the United States Government, was with defendants.

6. Petitioner was defendants' principal employe and one of the most important members of employer's organization since 1952.

7. At no time during petitioner's employment with defendants did he have a written wage agreement, the terms and conditions of his employment being completely oral.

8. On or about June 14, 1952, petitioner, along with five other employes of defendants, namely, Robert B. Lamson, Irwin A. Henninger, Waldo B. Pelton, Charles L. Vincent and William J. Johnson, entered into what was designated as an "AGREEMENT BETWEEN ERNEST C. DeLONG and CERTAIN EMPLOYEES OF OFFICE UTILITIES, INC."

9. Robert B. Lamson, Irwin A. Henninger, Waldo B. Pelton, Charles L. Vincent and William J. Johnson were brought into the present action as parties by order of court dated February 16, 1956.

10. By the terms of part I of the aforementioned "Agreement", defendant DeLong agreed to make a gift of five shares of the common capital stock of Office Utilities, Inc., owned by him, to each employe, subject to certain conditions pertaining to the repurchase by DeLong or Office Utilities, Inc., and also subject to the condition that said stock was to be thereafter transferred back to defendant DeLong to be held in trust by him for five years.

11. The par value of the said shares of stock was $100 each, the five shares aggregating $500. The book value of the five shares of the said capital stock on or about the date of the said agreement was approximately $150 per share, aggregating approximately $750, and the current book value is approximately $223 per share, aggregating approximately $1,115.

12. Part II of said agreement reads as follows:

"In consideration of the foregoing gift by Delong to each one of the undersigned Employees, each one of the undersigned, covenants and agrees that he will not for the period of three (3) years after severance of employment with the COMPANY, regardless of the reason for said severance, engage in, be connected with, work for, or be associated with, directly or indirectly, any business located within a radius of twenty-five (25) miles from Sixth and Hamilton Streets, Allentown, Lehigh County, Pennsylvania, which is in competition with the business of the Company. The parties understand that in case of breach or violation of the foregoing covenant, that damages would not alone compensate for such breach or violation and that therefore, in such event, either DeLong or the Company shall have the right to apply for and receive from any Court of Equity an injunction or other appropriate order restraining the violation or breach of the foregoing covenant and awarding damages for the breach thereof."

13. The subject agreement was signed on or about the date thereof, to wit, June 14, 1952, by all the six employes, in the presence of each other and Ernest C. DeLong, in the office of defendant company. Before the agreement was signed, the company's attorney, Louis M. Stamberg, read out loud the agreement word for word and explained the same to all the assembled employes, whereupon he left; thereupon, Ernest C.

DeLong again read the agreement word for word to all the assembled employes, and discussed it with them. Each employe was given a copy of the agreement. Before the meeting ended, all the employes, including petitioner, signed the said agreement and thereupon five shares of the capital stock of employer corporation were issued to each of the employes, who then endorsed the stock certificates in blank, which were thereafter held in trust in accordance with the terms of the agreement.

14. Petitioner signed the agreement voluntarily and without duress after he read the same, fully aware and cognizant of the terms of the said agreement.

15. The said agreement provided, inter alia, for the redemption or repurchase of the five shares of stock by defendants from any one of the said employes, (a) in case of death, at the book value thereof, or (b) in case of severance of employment, at the par value thereof.

16. Subject agreement was a sealed instrument and bore the seals of all the parties thereto.

17. On December 5, 1955, petitioner personally notified Ernest C. DeLong that he was quitting and leaving defendants' employ because he intended to go into a competing business for himself.

18. On December 16, 1955, petitioner left the employ of defendants and on that date received $500 from employer for the repurchase and redemption of his five shares of stock, in accordance with the terms of the agreement.

19. Petitioner requested employer to give him a release from the restrictive covenant against business competition which was contained in the agreement, which employer refused to do.

20. Petitioner never returned nor offered to return to employer the $500 he received for the resale of

his corporate stock to defendants as aforesaid, nor did employer ever ask for it.

21. Defendants normally operate and do business within a trading area of between 35 and 40 miles from the center of Allentown.

22. The violation of the restrictive covenants by petitioner will cause substantial damage to the employer.

## Discussion

At the outset, we must dispose of the contention of plaintiff at hearing and in his requests that DeLong rushed him and the other employes into signing and induced the signing by making some reservations and inducements.

If these contentions had been sustained by the testimony, and they were not, they would nevertheless be inadmissible, because there is no allegation of fraud, accident or mistake and plaintiff, by acceptance of the agreed par value of the stock held for him pursuant to the agreement, has forgone any right to have the agreement set aside. We need cite only the leading case upon that subject, Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323.

The next contention is that the agreement is void for lack of consideration, for which plaintiff cites Markson Bros. v. Redick, 164 Pa. Superior Ct. 499, in which it was held that mere continued employment was not sufficient consideration to support an agreement to refrain from competitive employment.

There are two answers to that contention: (1) That this instrument is under seal (Barnhart v. Barnhart, 376 Pa. 44, 56), and complies with the Uniform Written Obligations Act of May 13, 1927, P. L. 985, sec. 1, 33 PS §6, in that the parties declared that the signer intends to be legally bound (Rekas v. Dopkavich, 362 Pa. 292, 298); and (2) there is the matter

of the delivery of five shares of stock worth then $750 and now $1,100 and *in any event*, worth $500.

Plaintiff confronts us with our own case of Shor v. Freeman, 21 D. & C. 111, in which many years ago we refused to enforce a restrictive covenant for lack of mutuality and in which, ironically, present counsel for respondent successfully contended that that restrictive covenant was unenforceable. The Shor case itself has remained unchallenged, but it must be confessed that Standard Dairies, Inc., v. McMonagle, 35 D. & C. 256, which was decided on the authority of the Shor case, was reversed by our Superior Court as reported in 139 Pa. Superior Ct. 267.

Plaintiff also contends that the agreement, even if made for a valuable consideration, is unenforceable as a matter of public policy, citing Restatement, Contracts, §515, which reads as follows:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or

"(b) imposes undue hardship upon the person restricted, or

"(c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or

"(d) unreasonably restricts the alienation or use of anything that is a subject of property, or

"(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment."

Assuming for the sake of this discussion, that section 515 is the law of Pennsylvania, it does not follow

that the comments thereon are binding and surely the illustrations fall below the comments as authority. Furthermore, section 515 must be read in connection with section 516 (*f*) which reads as follows:

"The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly: . . .

"(f) A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent."

It must be noted on the question of reasonableness, however, that the law assumes that a contract solemnly entered into is prima facie good and that the person attacking the legality of a restrictive covenant has the burden of proving its unreasonableness: Holland v. Brown, 304 Pa. 545, 548; Plunkett Chemical Co. v. Reeve, 373 Pa. 513, 515; Seligman & Latz v. Vernillo, 382 Pa. 161, 165.

Testing the restrictive covenant by section 515 of the Restatement on Contracts, we find that subsections (*c*) and (*d*) do not apply and that (*e*) is clearly satisfied because it is ancillary to a contract of employment.

Clearly the enforcement of the covenant will cause some hardship to plaintiff, because his specific training and knowledge is in the office outfitting business. A great part of this hardship, however, arises out of his inability to use what he has no moral right to use, namely, his knowledge of and contacts with respondents' clientele. He retains and has the full right to use all the skills of business management and salesmanship learned in respondents' employ in any other line of endeavor or in any other community. The whole

field of merchandising anything not in competition with respondents is open to him.

The question of hardship to plaintiff is tied up with the damage to respondents by plaintiff's proposed competition and with the reasonableness of the provisions of the restrictive covenants. For any hardship that may inevitably result to petitioner we must remember that there is a compensating cushion of $500, the proceeds of the stock upon the receipt of which he entered into the agreement.

Respondents, individually and corporately, would certainly suffer if petitioner were permitted to enter into competition with them. It stands to reason that the core of his business would come from respondents' clientele and that respondents would suffer correspondingly.

When we come to the question of reasonableness of the restrictive covenants, precedent is of little value unless substantially similar facts have been ruled upon by a court whose decisions are controlling over our own.

Petitioner has cited no such precedents. Cases from Ohio, New York and Connecticut are entitled to great respect but they are not controlling.

We do not find either the geographic or the time restriction unreasonable. Both are related to the circumstances of the parties. In three years, respondents, knowing of the threatened competition, can consolidate their clientele and in three years petitioner will have lost his contacts with respondents' clientele so that if he then desires to compete, he will compete as a stranger and not with a semblance of continuity with his former employment. Whether or not three years is necessary to accomplish this purpose we cannot say certainly, but it is the time agreed upon by the parties,

it seems reasonable and the courts have approved longer periods of restricted activity: Fisher v. Hager, 310 Pa. 398; Holland v. Brown, supra.

As to area, the limitation of 25 miles also strikes us as being reasonable. The range of respondents' business was given as 35 to 40 miles. While a radius of 25 miles will include the cities of Bethlehem and Easton and several thriving boroughs, it must be remembered that even the 25 mile radius leaves open to petitioner the fringes of respondents' clientele and therefore the restriction is reasonable and petitioner has not shown that respondents' business is confined within a smaller range.

Petitioner emphasizes the language of the restrictive covenant which bars him from any business ". . . which is in competition with the business of the Company" and states that it will bar him from serving any store which sells anything sold by respondents, namely, department, chain and drug stores selling pencils and stationery or furniture stores and department stores selling furniture or typewriters. He would have us find that under the illustration to section 515 of the Restatement on Contracts, the *general* scope of the restrictive covenant is too broad.

Petitioner cites an illustration to section 515 of the Restatement on Contracts that a contract by a manager of a cotton mill not to be a manager in a mill of any kind in that city is illegal and void because the owner does not require the restriction from employment in a mill *of any kind*. We have stated above that the illustrations are the least authoritative of any of the pronouncements in the Restatement. Furthermore, as we have pointed out, the restriction in our case leaves open to petitioner every activity except that in competition with respondents, surely different from the situation in the illustration given.

It must be remembered in the first place that petitioner is the moving party in this case and that he is now asking us to decide that he may go into direct competition with respondents.

Next, if he should enter the employ of a firm now only incidentally selling some goods handled by respondents and should use such a department as a springboard to establish a business competing with respondents, we would not hesitate to enjoin such activity.

On the other hand, should he join another department of a firm only incidentally handling a fraction of the line of goods handled by respondents and should petitioner have no connection with any partly competing department, we can, when the question arises, decide whether to enjoin such employment.

The question of interpretation of fringe or purely technical violations of the covenant is not before us now. Should respondents attempt to enforce the covenant unreasonably we could hold them to that part of the covenant which is reasonable: Harris Calorific Co. v. Marra, 345 Pa. 464, 468; Smith's Appeal, 113 Pa. 579, 590.

This discussion sufficiently explains our acceptance or rejection of the several requests and therefore we have now explained our action in detail.

Our decision is based upon the following

### Conclusions of Law

1. An agreement which has for its purpose the restraint of trade or competition in business, to be valid must be founded upon a good and sufficient consideration and be no broader in scope than is necessary and required to protect the legitimate interests of the covenantee.

2. Unless a restraint of trade is partial instead of general and unlimited in time and space it will be

declared and held to be illegal. A restraint is partial if it is limited in time and geographic scope, but even though so limited by the terms of the agreement, this limitation is subject to examination and if found to be greater still than required for the necessary protection of the covenantee will be found to be unreasonable and therefore illegal.

3. The agreement of June 14, 1952, was a legal and valid contract, binding upon all the parties.

4. In addition to the agreement being a sealed instrument, there was legally adequate consideration moving between the various parties in connection with the execution of this agreement.

5. The restrictive covenants against competition by petitioner and the other signatory employes after severance of employment contained in the subject agreement are reasonable, do not constitute illegal restraint of trade and therefore are legal and enforceable in equity.

6. Petitioner has not met his burden of proving or establishing by sufficient evidence that the said restrictive covenants constitute an unreasonable or illegal restraint of trade.

7. There is no fraud, accident or mistake, or duress, or undue influence, attendant upon or connected with the execution of subject agreement.

8. The restrictive covenants in subject agreement are enforceable in, and subject to, injunction by a court of equity against petitioner upon the showing of a violation thereof.

9. Judgment will be entered dismissing petitioner's petition.

Now, July 30, 1956, it is the judgment of this court that the petition heretofore filed shall be dismissed and it is therefore dismissed at the cost of petitioner.