Markson Bros. *v.* Redick, Appellant.

500

Argued April 20, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*James E. Marshall,* with him *Lee C. McCandless* and *Marshall & Marshall,* for appellant.

*J. Campbell Brandon,* with him *W. D. Brandon* and *Brandon & Brandon,* for appellee.

OPINION BY HIRT, J., May 16, 1949:

In this action in equity an injunctive decree was entered restricting the defendant in the scope of her employment for the period of one year, following the date when she left the plaintiff's service.

There is no material dispute as to the facts and the testimony amply supports the findings of the lower court to this effect: Defendant had been employed by the former owner of "The Ladies Store" in Butler for twenty-five years prior to the sale of the store to plaintiff

on September 23, 1947. The business consisted in the sale of women's ready-to-wear apparel at retail. Defendant was the buyer of merchandise as well as in charge of sales for the former owner. Plaintiff, after acquiring the business, hired the defendant as manager of the store, at the same location in Butler, under a verbal contract at a salary of $60 per week. Defendant's duties under the contract were general and included the securing of necessary employes and fixing their wages, as well as the buying of some merchandise. On February 21, 1948 at the insistence of plaintiff's district manager, she entered into a written contract of employment with the plaintiff supplanting the existing verbal agreement. The contract, not under seal, is in the form adopted by plaintiff in contracting for the services of managers of all of its sixty similar stores in other cities. By its terms defendant's salary remained at the same rate of $60 per week and her duties as manager of plaintiff's store were unchanged. The provisions of the written contract, material here, are these:

"2. The term of this Employment shall be from week to week, terminable by either party at the close of business on any Saturday by giving one week's full notice to the other party. The COMPANY may give one week's salary in lieu of notice. . . .

4. The EMPLOYEE agrees that he will not either, for himself, or for any person, firm or corporation, directly or indirectly, either as employee, stockholder, owner, partner, agent, representative, or otherwise: . . .

b. For a period of one year after the termination of his employment for any cause whatsoever, engage or be financially interested in the business of selling merchandise, handled by the COMPANY, either in Butler, Pa., or any other city or town to which he may from time to time be transferred by the COMPANY or within twenty-five miles of said city or town . . . nor

c. At any time, whether during the term of his employment or after the termination thereof for any reason whatsoever, in any way

I. solicit, divert, take away or interfere with any of the customers, trade or business, or patronage of the COMPANY; or

II. divulge to any person or persons not connected with the COMPANY any of its business methods, forms, names and addresses of customers, or any of its trade secrets or confidential statistics, credit or other information of the same or different kind."

By letter dated August 9, 1948, addressed to the plaintiff's home office in Boston, Massachusetts, defendant resigned her employment with the plaintiff as of that date. About one month later she entered the employ of the owner of "The Fashion" shop, as manager of a competing retail business, selling women's ready-to-wear clothes, located two doors below plaintiff's store on South Main Street in Butler. Three women, of the five solicited by defendant, also left plaintiff's employ and were taken on as saleswomen at The Fashion shop. Because of her contact with the retail trade in Butler over a long period of years defendant had a large personal following. Two thousand letters were sent to women of a selected list by the owner of The Fashion shop notifying them of defendant's change in employment to that of manager of his business. Defendant supplied some of the names for the list.

By the final decree in this case defendant was enjoined for and during the period of one year from September 7, 1948, (a) "From engaging in or being financially interested in the business of selling merchandise handled by the plaintiff company, either in Butler, Pennsylvania, or any other city or town within a radius of twenty-five (25) miles from the City of Butler; (b) From soliciting, diverting, taking away or interfering with any

of the customers, trade, business or patronage of the Markson Brothers Company; (c) From divulging to any person or persons not connected with the plaintiff company any of its business methods, forms, names and addresses of customers or any of its trade secrets or confidential statistics, credit or other information of the same or different kind; (d) From accepting employment from or performing any work for the Fashion Store in the City of Butler, Pennsylvania; (e) Or in any way during said period interfering with or diverting any business of the plaintiff company." It is not contended that defendant divulged to her new employer any "trade secrets or confidential statistics" or other similar information pertaining to plaintiff's business. And the question is whether by the terms of the written contract the decree of the lower court restraining the defendant from acting as manager of a competing business under the circumstances and from supplying her new employer with the names of her former customers at The Ladies Store, was proper.

When this defendant entered plaintiff's employ, she brought to the service of that company the skills, business experience and personal following which she had acquired during the twenty-five years of her continuous service in The Ladies Store under the former owner. The duties which she assumed under the new owner by the verbal contract were somewhat different in scope, but certainly not in kind from her former work in The Ladies Store. She gained nothing additional in training or experience in the few months of her unsupervised service with plaintiff prior to entering into the written contract in question. And on leaving she took away no more than she had brought to the plaintiff at the inception of her employment with that company. In this respect the present case resembles *Iron City Laundry Co. v. Leyton*, 55 Pa. Superior Ct. 93, and is readily distinguishable

from *Standard Dairies v. McMonagle,* 139 Pa. Superior Ct. 267, 11 A. 2d 535, and like cases.[1]

Specific performance of a contract is of grace and not of right. *Reynolds v. Boland,* 202 Pa. 642, 648, 52 A. 19; Restatement, Contracts, §367. And the drastic remedy, to enforce the obligation of a contract by injunction should not be invoked except in a clear case. The obligation not to engage in a similar business, which plaintiff sought to impose on the defendant under the written contract, was unreasonable and the lower court well might have refused equitable relief on that ground alone. Cf. Restatement, Contracts, §515. In our view, however, the lower court erred on purely legal grounds in granting the injunction.

Plaintiff's district manager testified that under the verbal contract of hiring it was contemplated that defendant's employment was to be "a permanent arrangement". Since, however, the term of the employment under the verbal contract was indefinite, the law presumes that the hiring was at will and, as such, was terminable at any time by either party. *Trainer v. Laird*

---

[1] The *Iron City* case turned upon the fact that Leyton had many established customers of his own when he entered the employ of the laundry company; and after terminating his employment with that company the persons whose laundry work was solicited by him were his former customers and no others. For this reason the court refused to enforce a provision of the written contract of employment restraining Leyton, on leaving the employ of the laundry company from soliciting or collecting laundry work on his own account or on behalf of any other party for a period of ninety days. In the *Standard Dairies* case the facts presented an entirely different premise from that in the *Iron City* case as well as the instant case. McMonagle had no following nor customers of his own when he entered the employ of Standard Dairies. On quitting his employment with them he was properly restrained, under a provision of his written contract, from serving the same milk route for another employer in the restricted territory assigned to him by Standard Dairies when he entered their employ.

*et al.,* 320 Pa. 414, 183 A. 40; *Hay v. Pgh. Lodge No. 46 L. O. O. M.,* 137 Pa. Superior Ct. 205, 8 A. 2d 434; *Johnson v. Spear & Company,* 122 Pa. Superior Ct. 526, 186 A. 313. Defendant's verbal contract, being at will, did not substantially differ in the term of the employment from week to week as provided by the written contract. The change therefore was neither a detriment to the plaintiff nor a benefit to the defendant and in itself did not supply a consideration for the written contract. There is no evidence to sustain the finding of the court that under the written contract defendant was insured employment until September 1, 1948.

This written agreement was in partial restraint of trade and a contract of this nature to be enforceable, must, as one of the essential elements, be founded upon a good and sufficient consideration. *Cleaver v. Lenhart,* 182 Pa. 285, 37 A. 811. Defendant was no more than an employe of the former owner of The Ladies Store. She was not interested in its sale to plaintiff and was not benefited by the sale. In her subsequent relations with plaintiff also, she was but an employe. Under the verbal hiring defendant received $60 per week and her salary was fixed at the same rate by the written contract. In every other respect the defendant failed to receive anything under the written contract which she did not already have under the verbal arrangement. The obligation therefore which plaintiff sought to impose on defendant under the writing, fell for lack of consideration and the court erred in treating it otherwise. In *Com. Tr. Co. Mtge. Invest. Fund Case,* 357 Pa. 349, 354, 54 A. 2d 649, the rule is thus stated: " 'Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. Such promise adds nothing to and takes nothing from the original obligation. . . . A promise cannot be conditioned on a promise to do a thing to which a party is

already legally bound . . .': Wimer v. Overseers of the Poor of Worth Township, 104 Pa. 317, 320; Erny v. Sauer, 234 Pa. 330, 334, 83 A. 205. 'A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal': Quarture v. Allegheny County, 141 Pa. Superior Ct. 356, 363, 14 A. 2d 575. 'Doing what one is already legally obliged to do is not good and sufficient consideration': Murray v. Prudential Insurance Co., 144 Pa. Superior Ct. 178, 187, 18 A. 2d 820; Tradesmen's National Bank v. Cummings Bros. Co., 306 Pa. 280, 282, 159 A. 452". *Kesler's Estate,* 143 Pa. 386, 407, 22 A. 892, in principle, is to the same effect. Cf. Restatement, Contracts, §76(a). Referring to the necessity of mutual benefit or detriment in a new agreement, between the parties to an existing executory contract, it is said in 12 Am. Jur., Contracts, §412: "Each party must gain or lose something by the change. If the benefit or detriment is unilateral, a consideration is lacking, for it is a widely recognized and well-established legal principle that doing or undertaking to do only that which one is already under a legal obligation to do by his contract is no consideration for another's agreement to do what he is not already under a legal obligation to do. Doing or promising to do that which one is already bound to do is not a legal detriment. If one party to a contract, in agreeing upon a modification of it, neither assumes an additional obligation nor renounces any right, the promise of the other is nudum pactum and void".

The decree in this case is fatally defective in that the contract which it seeks to enforce is invalid for want of a good consideration.

Decree reversed and bill dismissed at plaintiff's costs.