# Liberty Mutual Insurance Company v. Millham

*F. Hastings Griffin, Jr.*, for plaintiff.
*Stanley W. Root, Jr.*, for defendant.

SLOANE, P. J., December 5, 1963.—

## A. Nature of the Case

This is an action in equity to restrain defendant, until February 8, 1965, from selling insurance, other than life insurance, in a geographical area having a radius of 25 miles from Bala Cynwyd, Pennsylvania. In addition to this general injunctive relief, plaintiffs also seek the recovery of $500 for attorney fees and expenses, as well as general costs.

## B. Finding of Material Facts

In July, 1956, defendant entered plaintiffs' employ as a business risk underwriter. He remained in that department until June 1, 1959, when he transferred to the sales department of plaintiff companies, in the capacity of salesman. On or about June 1, 1959, defendant was requested to sign, and did sign, a restrictive covenant wherein, inter alia, defendant promised not to engage in the business of insurance, other than life insurance, within 25 miles of Bala Cynwyd, Pa. for a period of 2 years after termination of his employment with plaintiffs. The agreement also provided that if plaintiffs instituted suit against defendant for violation of the covenant, then defendant promised to pay to plaintiffs the sum of $500 for attorney fees and other expenses of litigation.

On February 8, 1963, defendant voluntarily left plaintiffs' employ to accept a sales position with Merchants and Businessmen's Mutual Insurance Company in Philadelphia, Pa. He also became, at or about that time, a general insurance broker, representing other companies. Defendant is admittedly engaged in the business of insurance, other than life insurance, in the restricted geographical area.

Plaintiffs never waived the provisions of the restrictive covenant and defendant was advised, at the time he left plaintiffs' employ, that he would be held bound by the agreement he voluntarily executed.

## C. Memorandum of Law

Restrictive covenants, since they limit freedom and are in restraint of one's trade, can be special in their stress and thus not easy of resolution. A conclusion comes under rules of law and from a balancing of the respective interests of the persons concerned and a careful look to the requirements and endurance of the community.

Reasonableness of the restrictive covenant is a core: (1) The protection is no greater and broader than is required; (2) the restriction does not become a weighted imposition with undue hardship; (3) the public does not suffer from monopoly, price control or limited production. See Restatement, Contracts §§513-516.

There is the requirement of that hoary tenet termed consideration. I see no pervasive virtue in the consideration-doctrine. I see virtue in the morality enveloped in the phrase that a man is as good as his (written) word. But the rule persists that absent consideration, a restrictive covenant will not be enforced: Cleaver v. Lenhart, 182 Pa. 285. See Pennsylvania Funds Corporation v. Vogel, 399 Pa. 1, 6, 7.

And defendant raises the question of consideration as a block to enforcement of his restrictive covenant. But it is the reverse; reasons there are that block defendant on this question.

Defendant was, on or about the time of his signing of the restrictive covenant, given a position and status within plaintiff companies different from the job he had. This transfer and change of position, aside any salary change, alone suffices as consideration, since it represents a change in the position of all parties. This case is not similar to the one put to us by defendant: Markson Brothers v. Redick, 164 Pa. Superior Ct. 499. That case, holding a lack of consideration for the execution of a post-employment restrictive covenant, involved a situation where there was essentially no change in the duties to be performed by the employe upon her signing the covenant. The Superior Court stressed the fact that employe originally brought with her to her employer a sizeable list of her customers. Neither of these facts exists here; the duties of a salesman are different from those of an underwriter

and defendant had no following of his own either when he began employment with plaintiffs, or when he transferred to the sales department.

Too, the language of the agreement itself, executed by the parties, points to defendant's intention to be legally bound by its terms, placing the agreement within the purview of the Uniform Written Obligations Act; Act of May 13, 1927, P. L. 985, sec. 1, 33 PS §6. That act provides, in effect, that consideration is waived as an essential ingredient of an enforceable contract:

". . . if the writing also contains an additional express statement, *in any form of language*, that the signer intends to be legally bound." (Italics supplied.)

Defendant, in the agreement, vouched that:

"The company, in addition to other legal and equitable rights and remedies, shall be entitled to injunctive relief to restrain any actual or threatened violation of this agreement. . . ."

This langauge manifests defendant's resolution to be bound by his agreement. I should not look to defeat the patent purpose of the act and construe the agreement's wording to be beyond the scope of the act merely because of the absence of the words, "I intend to be legally bound." See Losman v. Obritz, 25 D. & C. 2d 484, where an injunction was granted restraining an employe from engaging in the same or similar business as that engaged in by his former employer. Though the court did find consideration, it indicated that without consideration, the Uniform Written Obligations Act would validate the agreement.

There is a third reason to frustrate the argument of lack of consideration. Though the parties do not debate whether or not the agreement is under seal, the agreement is a sealed instrument. Above and to the left of the signature of defendant appears the following language:

"WITNESS my hand and seal
this        day of        .19        ."

The argument could be that the blanks appearing above were not filled in and there was no mark made by defendant or otherwise appearing on the agreement which would suffice as a seal. Nevertheless, the word "seal" does appear as a part of the agreement and it should be assumed that defendant observed that word when he signed the agreement. If he did observe it and signed the contract without striking out that word, the contract is a sealed instrument. Defendant's position on want of consideration is untenable.

Defendant also contends that the agreement is too broad for the protection which the employer requires. We cannot sustain this position. The present-day Pennsylvania law concerning restrictive covenants in employment contracts is represented by two contrasting cases: Morgan's Home Equipment Corporation v. Martucci, 390 Pa. 618, and Pennsylvania Funds Corporation v. Vogel, 399 Pa. 1.

In Morgan, supra, two salesmen subject to a restrictive covenant left their employer and immediately began to compete in an identical business in association with another former salesman who was not subject to the restrictive covenant. The covenants obligated defendants not to compete with Morgan, the employer, for one year within a radius of 100 miles from Philadelphia and not to solicit or take away customers whom the employe had been serving and to keep confidential the names and addresses of the employer's customers. The court concluded that the covenant could not be enforced according to its broad terms, since defendants had received no special training or insight into the methods of doing business of Morgan. The court found the covenants not to compete generally were too broad and inequitable and ruled that the only covenant enforceable against defendants

was the covenant preventing them from competing for the patronage of Morgan's existing customers.

In Pennsylvania Funds Corporation, supra, plaintiff employed defendant as a mutual fund salesman under a written contract which contained a restrictive covenant. The covenant stated that, for a period of two years following termination, defendant could not engage in the sale of mutual funds throughout Pennsylvania. Defendant left plaintiff's employ and immediately set up his own business and engaged in direct competition with his former employer. The court enforced the general covenant to stay out of the business altogether, and refused to limit the covenant in any way, as did the court in Morgan.

Pennsylvania Funds Corporation, supra, is the case controlling here. In Morgan, supra, the salesmen were door-to-door salesmen of household articles and received no special training in their job. In Pennsylvania Funds Corporation, supra, defendant was a salesman of mutual funds, and he did receive special training and whose job required special knowledge; the court there rejected the rule or rationale of the Morgan case, as applicable to Pennsylvania Corporation.

"We are disinclined to allow Morgan's Home to shelter the instant appellee. To do so would be to extend the 'more stringent test' rule there announced to a point never intended": page 7.

Here, as in Pennsylvania Funds Corporation, supra, intelligent men, aware of what they were doing and what would follow, entered into an agreement where every term was fully disclosed. The covenant was reasonable as to time, as to circumference and as to the purpose intended; the protection of plaintiffs was in exchange for continued employment of defendant. There is no reason to eliminate the mutuality or do other than to enforce the restrictive covenant according to its terms.

There is one part of the covenant which we will not enforce. As chancellor we can limit our extending arm. This deals with the promise on the part of defendant to pay to plaintiffs the sum of $500 for attorney's fees and other expenses of litigation, in addition to paying for any costs as provided by law. We are not compelled to enforce every part of the agreement, and can, as was done in Morgan, supra, modify the agreement to do equity. Plaintiffs have secured the relief sought—an injunction. To us it would be unduly harsh to have defendant suffer a cash loss, as well as the economic loss that follows the restriction.

### D. Conclusions of Law

1. The restrictive covenant entered into between the parties is valid and enforceable.

2. Plaintiffs have no adequate remedy at law.

3. In accordance with the express terms of the agreement, plaintiffs are entitled to an injunction.

### Decree Nisi

And now, December 5, 1963, after hearing and consideration of the requests of the parties, defendant, Richard B. Millham, is enjoined and restrained, until February 8, 1965, in any place within 25 miles of the corporate limits of Bala Cynwyd, Pa., from directly or indirectly, either as an individual on his own account, or as an officer, employe, agent, or salesman of any firm or corporation, or otherwise, entering into or engaging in the business of insurance, other than life insurance; or directly or indirectly advising or persuading any person, firm or corporation known by him to be a policyholder of plaintiffs, or either of them, to discontinue a policy or policies issued by plaintiffs, or either of them, or to cancel any such policy or policies and to replace it or them with a policy or policies issued by any insurance company.

Each party shall bear his own costs.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days thereafter, the decree nisi shall be entered by the prothonotary as the final decree, as of course.