## Maintenance Specialties, Inc., Appellant, *v.* Gottus.

Argued September 26, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David B. Washington,* with him *Shields & Washington,* for appellant.

*Martin W. Sheerer,* with him *McGregor, Dillman, Sheerer & Schuchert,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 25, 1974:

Appellant, Maintenance Specialties, Inc., is a corporation engaged in the business of distribution of a

variety of parts and products used in vehicular maintenance, equipment maintenance and plant and building maintenance. Sometime in 1968, appellee, Ronald Gottus, became employed by appellant pursuant to an oral contract. On April 29, 1969, the parties entered into a written employment contract which included a covenant against competition after termination of employment.

February 23, 1972, appellant, alleging that appellee is now engaging in competition with it, in violation of the covenant against competition, filed a complaint in equity seeking an injunction. After oral argument, the chancellor granted appellee's motion for judgment on the pleadings, and dismissed appellant's complaint without leave to amend. This appeal followed.

The chancellor based his decision upon our opinion in *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A. 2d 292 (1967), where we refused to enforce a restrictive covenant because it was not ancillary to the taking of employment. The chancellor reasoned that since it was admitted that appellee had "taken employment" in 1968 under an oral agreement which did not include the restrictive covenant, it was apparent that the restrictive covenant was not ancillary to the taking of employment.

Appellant urges error, based on our opinion in *Jacobson & Co. v. Int. Environment Corp.,* 427 Pa. 439, 235 A. 2d 612 (1967), where we agreed with the chancellor in that case that the rule that a restrictive covenant is not enforceable unless ancillary to the "taking of employment," "did not mean to imply that for a restrictive covenant to be valid in any employer-employee contract such a covenant would have to be part of the original contract of employment between the parties. This would be an unrealistic requirement, for in many instances . . . the insertion of a restrictive covenant in

the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant. This is an economic reality, and the law should be influenced by it." 427 Pa. at 450.

In *Jacobson,* we distinguished *Capital Bakers* because in the latter case, the new contract was "without any change in [the employee's] employment status." 427 Pa. at 449. In other words, a restrictive covenant is enforceable if supported by new consideration, either in the form of an initial employment contract or a change in the conditions of employment.

In the instant case, if appellee's employment status had changed beneficially when the parties reduced their agreement to writing, the law enunciated in *Jacobson* would dictate that the restrictive covenant, if reasonable, would be enforceable. However, the appellant does not aver that any such change took place and appellee states that no such change took place.[1] Consequently, the restrictive covenant is not enforceable and the complaint was properly dismissed.

Decree affirmed. Each party to bear own costs.

---

[1] The written agreement was terminable by either party at any time on fifteen (15) days notice, although the employer could dispense with the notice if "in the sole judgment of the company, Ronald Gottus had been guilty of a breach of trust, neglect of the company's interest, or by failure to follow faithfully the instructions given to him by the company or its authorized representative." Even if the oral contract was terminable immediately without notice, the notice provision of the written contract would not be a sufficient change in the appellee's employment status to render the restrictive covenant enforceable. See *Markson Bros. v. Redick*, 164, Pa. Superior Ct. 499, 66 A. 2d 218 (1949).

CONCURRING OPINION BY MR. CHIEF JUSTICE JONES:

Although I agree with the majority opinion, I feel that amplification is necessary in this area of increasing litigation. The enforcement of restrictive covenants has been the subject of litigation for centuries. At earliest common law all restrictive covenants were considered as restraints of trade and therefore were unenforceable.[1] However, as part of the development of modern commercial law, courts began to recognize that under certain limited circumstances covenants not to compete were both permissible and enforceable.[2] The law in this Commonwealth for more than a century has been that in order to be enforceable covenants in restraint of trade must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract of employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory. *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A. 2d 612 (1967); *Capital Bakers, Inc. v. Townsend*, 426 Pa. 188, 231 A. 2d 292 (1967); *Barb-Lee Mobile Frame Co. v. Hoot*, 416

---

[1] In *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A. 2d 838 (1957), Mr. Justice COHEN detailed the English common law background of restrictive employment covenants, including the following excerpt from The Dyer's Case, Y. B. 2 Hen. V, Pl. 26 (1415). A plaintiff brought an action against a dyer upon a bond whereby the dyer promised not to practice his craft in a certain village for a brief period of time. As soon as the bond was read, the Court declared, "The obligation is void because the condition is against the common law, and by God, if the plaintiff were present he should rot in the gaeol till he paid a fine to the King." (Translation from the French by the Court.) *Morgan's Home Equipment Corp v. Martucci*, 390 Pa. at 627, n. 9, 136 A. 2d at 844, n. 9.

[2] The historical development of contracts in restraint of trade is treated in Carpenter, *Validity of Contracts Not to Compete*, 76 U. Pa. L. Rev. 244 (1928).

Pa. 222, 206 A. 2d 59 (1965); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957); *Cleaver v. Lenhart,* 182 Pa. 285, 37 A. 811 (1897); *Gompers v. Rochester,* 56 Pa. 194 (1867); *Keeler v. Taylor,* 53 Pa. 467 (1866); *Markson Bros. v. Redick,* 164 Pa. Superior Ct. 499, 65 A. 2d 440 (1949). *See also* Restatement of Contracts §515(e) (1932).

All three requirements must coalesce before a restrictive covenant is enforceable. The necessity of the first element is stated in *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. at 629, 136 A. 2d at 845, "It has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged therein." Although the covenant not to compete must be ancillary to a contract of employment, it need not necessarily be executed simultaneously with the *initial* taking of employment. *E.g., Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A. 2d 612 (1967). Where a covenant not to compete is executed subsequent to the initial employment, however, its performance will not be enforced unless the employee who restricts himself receives a corresponding benefit or change in status. Without such a change of status, the new contract will not qualify as a "taking of employment," nor will there be adequate consideration to support the additional covenant of the employee. "In *Capital Bakers,* we held that a covenant in an employment contract executed some twelve years after the initial taking of employment was not ancillary to the taking of employment. However, we emphasized that the new contract was 'without any change in his employment status.' Thus it did not qualify as 'taking of employment'." *Jacobson & Co. v. International Environment Corp.,* 427 Pa. at 449, 235 A. 2d at 618. The new contract in the instant case like-

wise creates no change in employment status and therefore the covenant should not be enforced under the rule set forth in *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A. 2d 838 (1957).

As noted above, our prior case law also requires the presence of valuable consideration to support a covenant not to compete. Analysis reveals that there are two types of consideration which will support a' restrictive covenant in an employment contract. When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself.[3] When the restrictive covenant is added to an existing employment relationship, however, it is only enforceable when the employee who restricts himself receives a corresponding benefit or change in status. An employee's continued employment is not sufficient consideration for a covenant not to compete which the employee signed after the inception of his employment, where the employer makes no promise of continued employment for a definite term.[4]

---

[3] For example, in *Barb-Lee Mobile Frame Co. v. Hoot*, a restrictive covenant contained in a contract which accompanied the taking of employment was upheld. We stated: "It must be obvious that the consideration upon which the restrictive covenant in this case was based was the employment itself. In consideration for plaintiff's employing the defendant, the latter agreed not to compete with the plaintiff in accordance with the terms of the restrictive covenant. Where the restrictive covenant is ancillary to a contract establishing an employment relationship, where none existed previously thereto, the employment constitutes consideration supporting the covenant. . . ." 416 Pa. 222, 225-26, 206 A. 2d 59, 61 (1965).

[4] This position has been taken by courts from other jurisdictions, but generally only where it appears that the employee otherwise would have been discharged, or where he actually remained employed for a substantial time after the execution of the covenant. *See, e.g., Roessler v. Burwell*, 119 Conn. 289, 176 A. 126 (1934) (employment continued four years after execution of the covenant); *Breed v. National Credit Association*, 211 Ga. 629, 88 S. E. 2d 15 (1955) (employment continued two years after execution of the

In *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A. 2d 612 (1967), this Court did find such a change of status as to support the addition of a restrictive covenant to a pre-existing employment relationship.[5] In the lower court proceeding in *Jacobson* the situation of a co-worker of Jacobson, however, presented the precise facts of this case. The restrictive covenant there was struck down. In distinguishing that ruling from the case then at bar, we stated: "[T]he findings were that Kassner [the co-worker] was permanently hired in February, 1962, under an oral contract *without* a restrictive covenant, and in June required to execute a written employment contract identical to that under which he had been working, except that it contained a restrictive covenant. Clearly, here is a case of no consideration for the covenant." *Id.* at 451, 235 A. 2d at 619.

In *Markson Bros. v. Redick,* 164 Pa. Superior Ct. 499, 66 A. 2d 218 (1949), the Superior Court was also

covenant); *Frierson v. Sheppard Building Supply Co.*, 247 Miss. 157, 154 So. 2d 151 (1963) (employment continued four years after execution of the covenant and trial court found that the employee would have been discharged had he not signed the covenant); *McAnally v. Person*, 57 S. W. 2d 945 (Tex. Civ. App. 1933); and *Bettinger v. North Ft. Worth Ice Co.*, 278 S. W. 466 (Tex. Civ. App. 1925) (cases in which the trial court found that the employees would have been discharged if they had not signed the covenants). *See generally* Annot. 51 A. L. R. 3d 825 (1973).

[5] The employee in *Jacobson* had been hired under an oral contract in 1957 which provided a $10,000 salary and contained no restrictive covenant. In 1959 the employee signed a written contract which contained a restrictive covenant not to compete with his employer after termination of his employment. The 1959 contract also changed the employee's compensation scheme to a $9,000 salary plus a share of the profits. As a result of this new contract, the employee's salary increased dramatically. In 1963 the employee earned in excess of $24,000. Clearly the modified compensation arrangement was consideration for the execution of the restrictive covenant.

presented with a case practically identical to the case at bar. An employee who had been working for five months under an oral contract as a saleswoman and floor manager in a clothing store signed a written contract which provided her with the same salary, responsibility and benefits as her oral contract, but contained a covenant restricting her right to work for competitors after termination of her employment. The only change in the employment relationship to support this covenant was the creation of a week-to-week employment where there had previously been employment at will. The Superior Court held that the covenant contained in the written contract was not supported by consideration and refused to enforce the restrictive covenant.[6]

The continuation of employment under the same terms has also been held to be insufficient consideration to support a restrictive covenant in cases before our courts of common pleas. *See National Starch & Chemical Corp. v. Snyder*, 34 Pa. D. & C. 2d 533 (Phila. C. P. 1964); *W. N. O. W., Inc. v. Barry*, 32 Pa. D. & C. 2d 514 (York C. P. 1963); *Voss Machinery Co. v. Norris*, 82 Pa. D. & C. 368 (Allegheny C. P. 1952); *Consolidated Home Furnishing Co. v. Getson*, 80 D. & C. 488 (Phila. C. P. 1951). The law with regard to the quality of consideration required to support a restrictive cov-

---

[6] For the same reason the fifteen-day notice provision in the written contract is not sufficient consideration to support the restrictive covenant in this case. This is particularly true since closer examination of the contract reveals that the notice provision is illusory and cannot be considered as consideration for anything. Clause 7(b) of the contract provides that the company may dispense with the fifteen-days' notice if "in the sole judgment of the COMPANY, Ronald Gottus has been guilty of a breach of trust, neglect of the COMPANY'S interests, or of other acts detrimental to the COMPANY'S interests, or by failure to follow faithfully the instructions given to him by the COMPANY or its authorized representative."

enant is clear and well-settled. The principles upon which such rule is based are sound and appellant has presented no reason why this salutary policy should not be followed here. I therefore concur with the majority in affirming the decree of the lower court.

Mr. Justice EAGEN, Mr. Justice POMEROY and Mr. Justice NIX join in this concurring opinion.

———

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I join in the concurring opinion of the Chief Justice, but add this additional word.

As a general proposition, the assertion in Mr. Justice MANDERINO'S dissenting opinion that either party may insist upon a change in the terms of employment as a condition for continuing an at-will employment relationship, and that the continued employment is the consideration supporting any such change, is unarguable. Nevertheless, as Mr. Chief Justice JONES points out in his concurring opinion, our courts have consistently held that the continuation of an at-will employment relationship is *not* sufficient consideration to support a covenant not to compete after the employment has terminated. I believe that sound policy supports this exception to the general rule even if strict logic does not. Most of the burdens which might be imposed on an employee in return for continued employment, such as a decrease in compensation or an increase in hours or duties, are conditions which terminate when the employment relationship itself comes to an end. An employee who finds them too onerous can immediately unburden himself by quitting his job. A covenant not to compete, however, may hinder a man's ability to earn a living long after he has left the employment to which the covenant was ancillary. An employee who has an economic stake, or even an emotional stake, in the continuation of an existing at-will employment arrangement may find it difficult indeed not to accept

a covenant not to compete when his employer demands it. I am reluctant, therefore, to discard the rule, which our cases have clearly established, that more is required to support a covenant of this sort than just the uncertain prospect of continued employment at the employer's will.

----

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. If a restrictive covenant would be valid at the time an employee is first employed, I fail to see any logic to the prohibition against an employer requesting the same covenant subsequent to the employee's initial employment as a condition of continuing employment. There is no claim in this case that the employee had an oral contract of employment for a specific term which was being altered or breached. In the absence of such a claim, the employee is employed orally at will and that employment can be canceled at any time, at least in the absence of a claim of illegal cause. The only claim here is the bald assertion that a restrictive covenant cannot be demanded of an employee after initial employment if all other circumstances remain unchanged. I fail to see why. The majority seriously encroaches on the legitimate freedom of an employer. Why should an employer who requests a legal restrictive covenant at the time of initial employment have any advantage over an employer who later decides he should have such a restrictive covenant and no breach of any oral or written contract or other illegality is involved.

The appellant, Maintenance Specialties, Inc., is a corporation engaged in the business of distributing a variety of parts and products used in vehicular, plant and building, and equipment maintenance. The appellee, Ronald Gottus, formerly had been employed by the appellant as a salesman. Appellant filed a complaint alleging that the appellee was in violation of a

covenant not to compete. The complaint requested injunctive and other general relief. No answer was filed to the complaint, but the appellee and the appellant both orally moved for judgment on the pleadings. The lower court granted the appellee's motion and dismissed appellant's complaint without leave to amend. This appeal followed. We should reverse and remand.

The facts alleged in the complaint must be accepted as true. Appellant alleged that on or about April 29, 1969, appellant and appellee entered into a written contract of employment. The contract contained a promise by the appellee not to compete in various specified ways with the appellant during the term of the contract or for two years following termination of the employment contract. The contract had a two-year term with a provision that either party could terminate the contract after giving fifteen days notice. The appellant could also terminate the contract immediately for breach of trust, neglect of the appellant's interest or failure to follow appellant's instructions. The complaint further alleged that on or about July 31, 1971, the appellee terminated his employment with the appellant and immediately engaged in activities which were in violation of the restrictive covenant.

The appellee initially was employed under an oral contract in 1968, the year prior to the execution of the written contract. There is nothing in the record to indicate that the oral contract was for a specified term. We, therefore, must assume at this time that it was terminable at will. *Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A. 2d 687 (1956); *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A. 2d 323 (1951).

A covenant not to compete is in effect a restraint of trade. Originally, for that reason, courts voided such covenants but later recognized that the covenant not to compete serves a legitimate interest in a free enterprise system. The covenant not to compete may

encourage stability in a business and give security to an employer by protecting his trade secrets and customers list, and by limiting the injurious effect of a competitor hiring an employee whose services are of a unique character. While recognizing that the covenant not to compete may be advantageous, the danger of excessive abuse must be also weighed in considering whether such a covenant should be enforceable.

In balancing the employer's interest against the danger of a restraint of trade, the courts have concluded that a covenant not to compete shall be enforceable when the restrictive covenant (1) is contained in an otherwise valid contract, (2) is ancillary to an existing employment or contract of employment, and (3) is reasonably limited in time and scope to that "necessary for the protection of the employer . . . without imposing undue hardship on the employee . . ." Restatement of Contracts §§515(e), 516(f) (1932).

The first element, the validity of the contract in which the restrictive covenant is contained, requires that the formal requisites of contract law be met. There must be an offer, an acceptance, and consideration. The offer and acceptance in this case are established by the employment relationship. The question here is whether consideration has been given since there was a preexisting oral contract of employment which was terminable at will. In such circumstances the employee is not guaranteed continuing employment nor is the employer guaranteed the continuing services of the employee. Either party, therefore, may require any change in the terms of the employment as a condition for continuing the employment relationship. The continued employment is the consideration supporting any new term requested by either party. The result would be different if the preexisting contract, oral or written, had not been terminable at will. Where the contract sets a definite term, were one party to increase the duty

of the other without correspondingly giving a benefit to that party, the increased duty would not be enforceable. This is so because the consideration for the increased duty cannot be the continuing employment since both parties were already bound to continue the employment relationship for the term specified in the contract.

Concrete examples of the above distinction between *terminable at will* contracts and *term* contracts may be helpful to illustrate why continuing employment is consideration for changes in terminable at will contracts and not for changes in term contracts. A and B are in an employment relationship terminable at will. A, the employer, originally hired B, the employee, to sell A's products for $3.50 per hour. B now tells A that he will not continue working unless he receives an additional $1 an hour. A agrees. B may now require A to pay him the increased salary for work he subsequently performs under that agreement even though B is still performing the same services. B's continuing to work for A when he could have quit with impunity is the consideration which makes the agreement to increase B's salary enforceable for work he performs under that agreement. The reverse is also true. A tells B that B will have to conduct interviews with new employees during his off hours if he wishes to continue working for A. B agrees. A is still only required to pay B the same salary even though B is performing an additional service. The new agreement is enforceable since the consideration for B's extra work is A's continuing to employ him.

If A had hired B to sell A's product for $3.50 an hour under a contract which contained a definite term of two years and B during that period requested a raise of $1 per hour for the remainder of the term and A agreed, B could not compel A to pay him that amount for work later performed during the remainder of the

two years. B was already under a duty to continue working for $3.50 per hour for that same period. Also, if B had agreed to A's demand to perform the additional interviewing services at the same salary for the life of the contract, B would not be under a duty to perform that service. There would be no consideration for B's extra promise since A was under a duty to pay B $3.50 per hour even if B only sells A's product and does not interview.

In this case, since the preexisting oral contract was terminable at will, the appellant had no duty to continue to employ the appellee under the original employment conditions. When the appellee in the later written contract covenanted not to compete, his continued employment by the appellant was the consideration making all the terms of the written contract enforceable. Therefore, the first element necessary to enforce the covenant is met since the covenant is contained in a valid contract—there was an offer, an acceptance, and consideration.

The next inquiry is whether the covenant not to compete is *ancillary to a contract of employment*. The term *ancillary to employment* does not mean ancillary to *initial* employment. It simply means that a covenant not to compete will be invalid if there is no employment relationship between the parties. Thus if A and B, whose only relationship to each other is that of neighbors, enter into a contract which contains a covenant by B not to compete with A in selling goods in a given territory for a given period of time, the covenant would be considered illegal because it is an unreasonable restraint of trade. If, however, the same contract is entered into by A and B and A is B's employer, the covenant is not considered an unreasonable restraint of trade because there is a legitimate interest in protecting the employer. It should make no difference whether a restrictive covenant is agreed to at the time of initial

employment or at some later date so long as the employment relationship exists. There is no reason why we should protect an employer who obtains the covenant at the time of initial employment and not protect an employer who later obtains the same covenant since the interest to be protected in both instances is the same.

In *Jacobson & Co., Inc. v. International Environment Corp.,* 427 Pa. 439, 235 A. 2d 612 (1967), we specifically rejected the argument that a restrictive covenant is not valid unless it is executed simultaneously with the initial establishment of an employer-employee relationship. We there said that the restrictive covenant did not have to be a part of any original contract of employment between the parties. In *Jacobson* the employee had been employed for several years before the parties entered into an employment contract containing a restrictive covenant. Likewise in *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A. 2d 838 (1957), employees were employed on a provisional basis and at a later date signed a written contract containing restrictive covenants. This Court held that the written contracts containing the covenants were valid and enforceable.

Appellee relies on *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A. 2d 292 (1967), for his claim that a restrictive covenant is only valid if it is ancillary to initial employment. In *Jacobson,* we specifically rejected such an interpretation of *Capital Bakers, Inc.,* and held that there was no requirement that the restrictive covenant be ancillary to *initial employment* so long as the restrictive covenant was ancillary to an employment relationship. Additionally, in *Capital Bakers, Inc.,* we noted with approval section 515 of the Restatement of Contracts which specifically permits a restrictive covenant which is ancillary to *an existing employment or contract of employment.*

The third element required before a restrictive covenant will be enforced is a finding that the covenant is reasonable as to time and territory. The trial court expressed no opinion on this element and until an answer is filed we do not know if the appellee is challenging the covenant on this basis.

The decree of the trial court should be reversed and the matter remanded for further proceedings.

Mr. Justice ROBERTS joins in this dissenting opinion.