IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Yakopec III,        :
        Petitioner    :
             :
    v.          :
             :   No.  211 C.D. 2019
Unemployment Compensation Board   :   Argued:  February 10, 2020
of Review,          :
        Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE J. ANDREW CROMPTON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE CROMPTON**        FILED:  March 3, 2020

Stephen Yakopec III (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board), finding him ineligible for unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law).[1]  Claimant argues the Board's finding that he committed willful misconduct through his repeated tardiness is not supported by substantial evidence.  He also asserts the Board abused its discretion in failing to make a finding that the modification of his employment agreement by imposing a start time was not proper.  Discerning no error below, we affirm.

Claimant worked as a software engineer for Method Automation Services Inc. (Employer) as a full-time, salaried employee from August 2014 to February 2018.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e) (relating to willful misconduct).

On February 19, 2018, Employer changed Claimant to an hourly employee based on his inconsistent start times and failure to work a 40-hour week. Claimant's supervisor (Supervisor) emailed Claimant confirming this change in status, stating "You no longer have any start time." Certified Record (C.R.), Item No. 9 (February Email).[2]

However, and relevant here, on July 18, 2018, after Claimant repeatedly did not work the expected hours, Supervisor and Employer's President met with Claimant and informed him Employer would be enforcing an 8:30 a.m. start time each work day (July Warning). In the next two weeks, Claimant was late repeatedly. Shortly thereafter, Employer discharged Claimant for repeated tardiness.

Claimant filed an application for UC benefits, which the local service center denied. Claimant appealed, and a referee conducted a hearing where both parties were represented by counsel. Employer's President and Supervisor testified on Employer's behalf and Claimant testified on his own behalf. The referee found Claimant ineligible for UC benefits based on willful misconduct. Claimant appealed to the Board, which made the following findings of fact:

1. […] [Claimant's] last day of work was August 1, 2018.

2. On February 19, 2018, [Claimant] met with [Employer] about his repeated tardiness.

3. On July 18, 2018, [Employer] met with … and notified [Claimant] that this was his <u>final warning</u>, <u>and any further tardiness</u> which meant arriving later than 8:30 a.m., <u>would result in his termination</u>.

4. [Employer] monitored [Claimant's] key fob and security cameras.

---

[2] Although Claimant refers to the February Email as his new employment agreement, it confirmed the termination of his prior contract, and critically, advised that: "Effective immediately, <u>you have no contract of any kind</u>." Certified Record (C.R.), Item No. 9 (emphasis added).

5. Between July 19, 2018 through August 1, 2018, [President], who was […] working remotely, noticed that the key fobs and video cameras showed [Claimant] arrived to work after 8:30 a.m. seven times.

6. On August 1, 2018, [Employer] decided to terminate [Claimant] for habitual tardiness.

7. [Employer] wanted to terminate [Claimant] in person and was waiting to do so until August 3, 2018, the expected return date.

Bd. Op., 1/25/19, Findings of Fact (F.F.) Nos. 1-7 (emphasis added).

Claimant filed a petition for review,[3] arguing the Board erred in concluding his repeated tardiness constituted willful misconduct. He asserts the Board disregarded evidence of an employment agreement that changed him from a full-time to an hourly employee, eliminating his start time. By imposing a start time, he posits, Employer modified his employment agreement without consideration. Claimant also contends the Board's Finding of Fact No. 2, as to his repeated tardiness, is not supported by substantial evidence.[4]

Employer intervened and filed a brief. The Board declined to file a brief and is not participating in this appeal. After briefing and argument, the matter is ready for disposition.

---

[3] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003).

[4] "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Review*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013).

Pursuant to Section 402(e) of the Law, 43 P.S. §802(e), a claimant is ineligible for UC benefits when an employer terminates his employment for willful misconduct. This Court defines willful misconduct as: (a) a wanton or willful disregard for an employer's interests; (b) a deliberate violation of an employer's rules; (c) a disregard for standards of behavior which an employer can rightfully expect; or (d) negligence indicating an intentional or substantial disregard of an employer's interest or an employee's duties or obligations. *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495 (Pa. Cmwlth. 2018). A claimant's deliberate violation of an employer's reasonable directive may constitute willful misconduct under the Law. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603 (Pa. Cmwlth. 2011).

The employer must first prove the existence of a work rule and the claimant's knowledge and violation of this rule. *Id.* If the employer satisfies its burden of proof, the burden then shifts to the claimant to prove good cause for the rule violation. *Id.* In the UC context, the claimant bears the burden of showing good cause, meaning his actions were justified and reasonable under the circumstances. *Id.*

"[T]he [Board] is the ultimate fact-finder in [UC] matters . . . ." *Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). As the fact-finder, the Board is entitled to make its own credibility determinations regarding witnesses, which are within its discretion. *Serrano v. Unemployment Comp. Bd. of Review*, 149 A.3d 435 (Pa. Cmwlth. 2016). These credibility determinations are not questioned on appellate review. *Id.*

Here, the Board found Claimant violated Employer's reasonable rule that he arrive at work by 8:30 a.m., despite receiving at least one warning that lateness would not be tolerated. F.F. No. 3 (July Warning). "[T]he law is clear that habitual tardiness, particularly after warnings, is sufficient evidence to sustain a finding of willful misconduct." *Markley v. Unemployment Comp. Bd. of Review*, 407 A.2d 144, 146 (Pa. Cmwlth. 1979); *see also Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159 (Pa. Cmwlth. 2013).

On review, the record supports the Board's findings that Employer met with Claimant about his repeated tardiness.[5] Specifically, both President and Supervisor testified Employer warned Claimant about late arrivals (after 8:30 a.m.) in July 2018. *See* Ref. Hr'g, 11/7/18, Notes of Testimony (N.T.) at 13, 18-19. Further, President testified Employer changed Claimant from a salaried to an hourly employee in February 2018 based on Claimant's repeated lateness. *Id.* at 8.

We reject Claimant's argument that Employer's February Email stating that he had no start time precluded the Board from finding his discharge from employment resulted from repeated tardiness six months later. Primarily, Claimant relies on the lack of a new employment agreement imposing a start time, and his purported lack of agreement to the 8:30 a.m. start time. Claimant's contractual arguments, while possibly persuasive in a contract dispute, are not dispositive as to the legal question of whether he committed willful misconduct in the UC context.

---

[5] As early as November 2017, Employer issued a written warning to Claimant regarding his repeated lateness over the preceding six months. *See* C.R., Item No. 9 (Emp'r's Ex. 4, November letter). After noting his repeated lateness, the letter emphasized the 8:30 a.m. start time, stating "[s]hould you be tardy in a year more than 3 (three) times[,] termination will result." *Id.* Further, the February Email referred to a meeting with Supervisor, enumerating Claimant's failure to complete 40-hour weeks or 8-hour days, and his disregard for his 8:30 a.m. start time.

To the extent Claimant asserts he was confused as to whether he had a start time based on the February Email, his argument is unavailing. On July 17, 2018, Claimant specifically acknowledged Employer's expectation that he "be here by **8:30 [a.m.]** every day in an attempt to return to [his] regular employee status come August 15th." C.R., Item No. 9 (Ex. 3, Claimant email) (emphasis in original).

Notwithstanding Claimant's framing of the issue, the Board did not err when it made no finding regarding Employer's authority to re-impose a start time in July 2018 when Claimant did not work sufficient hours after its removal.[6] In the context of this UC appeal, we consider whether substantial evidence supports the Board's finding that Claimant committed willful misconduct in July 2018.[7]

---

[6] Primarily, Claimant challenges the enforceability of the 8:30 a.m. start time when Claimant did not specifically agree to modify that term and the February Email removed his start time. His argument presupposes that the February Email constitutes an employment contract. Essentially, Claimant asserts Employer's imposition of a start time is a contract modification that fails for lack of consideration.

Claimant cites no applicable authority for the proposition that imposition of a start time requires additional consideration. *See* Pet'r's Br. at 11 (citing *ADP, Inc. v. Morrow Motors, Inc.*, 969 A.2d 1244 (Pa. Super. 2009) (involving auto dealership contract for computer software/equipment and services); *Maint. Specialties, Inc. v. Gottus*, 314 A.2d 279 (Pa. 1974) (explaining necessity for additional consideration for restrictive covenants not to compete)). Generally, when employment is terminable at will, and there is no term of employment set, either party may require a change in terms of employment as a condition for continuing the employment relationship. In such cases, "that the continued employment is the consideration supporting any such change is unarguable." *Maint. Specialties*, 314 A.2d at 284 (Pomeroy, J., concurring).

Moreover, Claimant emphasized his desire to remain employed by Employer, that he would "try [his] hardest" to meet its expectations regarding his start time. C.R., Item No. 9, (Ex. 3). This and his continued work manifested his acceptance of this change in the terms of employment.

[7] Claimant also challenges Finding of Fact No. 2 as lacking substantial evidence. *See* Pet'r's Br. at 14. In determining whether substantial evidence supports a finding, we view the record in a light most favorable to the party that prevailed before the Board by allowing that party the benefit of all reasonable inferences that may be drawn from the evidence. *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106 (Pa. Cmwlth. 2004). Simply because one party views testimony differently than the Board, or its witnesses gave a different version of the events, is not grounds for reversal if the facts found are supported by substantial evidence, as they are here. *Id.*

Critically, there is no dispute that Claimant was late several times following his July meeting with Employer's President and Supervisor. In the hearing, Employer's witnesses testified Claimant was late 11 out of 13 days. N.T. at 21. Indeed, Claimant admitted that he was repeatedly tardy following the July Warning. N.T. at 27. Notwithstanding the July Warning, Claimant repeatedly clocked in after the start time between July 18 and August 1, 2018, his last day of work before Employer terminated his employment. *See* C.R., Item No. 9 (Ex. 4, Time Entries).

Moreover, the record contains substantial evidence to support the Board's finding regarding Claimant's repeated tardiness. Employer's exhibits reflect repeated counseling of Claimant regarding his tardiness, and the issuance of a written warning in November 2017 based on his history of repeated lateness. The February Email, which Claimant relies on as a purported employment agreement, expressly states that he had "no contract of any kind." C.R., Item No. 9. It also corroborates Supervisor's testimony that he met with Claimant in February 2018 regarding his repeated lateness and insufficient hours worked, thus requiring a downgrade in status to an hourly employee.

Ultimately, Employer's evidence, credited by the Board, reflects that the 8:30 a.m. start time was a condition of employment of which Claimant was aware as of the July Warning, and that Claimant repeatedly disregarded it. Employer thus met its burden of proving a reasonable work rule, Claimant's awareness of it, and his failure to follow it. *Chapman*.

Because there is substantial evidence of the start time and July Warning associated with failure to adhere to it, and Claimant's admitted failure to adhere to the start time, without good cause, Employer established willful misconduct. *Ellis*.

Claimant's argument that the Board capriciously disregarded the evidence is equally unavailing. The Board did not disregard the February Email documenting the change in Claimant's employment status from salaried to hourly employee, without a specific start time. To the contrary, the Board recognized the February Email followed a meeting between Supervisor and Claimant, and it credited Supervisor's testimony that Employer advised Claimant that his continued employment was in jeopardy if he could not arrive on time.

In sum, the Board did not disregard Claimant's evidence; rather, it did not credit his characterization of the evidence. Such credibility determinations are not reviewable on appeal. *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266 (Pa. Cmwlth. 2003).

Claimant's repeated lateness following the July Warning constitutes willful misconduct for which Claimant established no good cause. Substantial evidence supports the Board's findings underlying this legal conclusion. Accordingly, we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Yakopec III,
                Petitioner

        v.

Unemployment Compensation Board
of Review,
                Respondent

:
:
:
:
:
:    No. 211 C.D. 2019
:
:
:
:

## **O R D E R**

**AND NOW**, this 3rd day of March 2020, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

_____
J. ANDREW CROMPTON, Judge