THOMAS, Appellant,

v.

CORRIGAN, Appellee.

[Cite as *Thomas v. Corrigan* (1999), 135 Ohio App.3d 340.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 98–A–0095.

Decided Oct. 29, 1999.

*Timothy N. Toma,* for appellant.

*Jonathan W. Winer,* for appellee.

NADER, Judge.

Appellant, Nathan A. Thomas, filed a small claims complaint against appellee, Daniel Corrigan, in the Ashtabula County Court, Eastern Division, on January 8, 1998. At the time of the complaint, appellee was a judge for the Cuyahoga County Court of Common Pleas. The complaint alleged that appellee, as appellant's landlord, had wrongfully withheld his $600 security deposit and prayed for judgment in the amount of $1200. The complaint and summons were served by certified mail upon appellee at Court Towers 23B, 1200 Ontario Street, in Cleveland, Ohio ("the justice center"), appellee's business address. The record indicates that certified mail was signed for, but the signature is not legible.

The matter was set for a hearing, which was held on February 12, 1998. Because appellee was not present at the hearing, the trial court granted appellant default judgment. Shortly thereafter, appellant collected the judgment through garnishment. On August 7, 1998, appellee filed a motion to vacate the judgment.

In his motion, appellee argued that the court did not have territorial jurisdiction because the rental property in question was located in Rome, Ohio, which is within the jurisdiction of the Ashtabula County Court, Western Division.

The court held a hearing on the motion on September 10, 1998. At the hearing, the court orally acknowledged that R.C.1907.15(B) seemed to say that the jurisdictions of the Eastern and Western Division were coextensive. However, the court indicated that it had serious problems with the service of process. Appellee testified that process was served at his proper work address, but that he did not sign for it and that he did not receive it because he was in the hospital at the time, and it might not have been properly delivered. On September 11, 1998, the trial court issued a judgment entry stating:

"Judgment rendered on February 12, 1998, is vacated due to lack of good service on defendant. This case is hereby dismissed at plaintiff's costs and should be refiled in Western County Court."

Appellant raises the following assignments of error:

"The trial court erred in vacating its judgment against the defendant-appellee Corrigan.

"The trial court erred in dismissing the complaint after vacating judgment."

In his first assignment of error, appellant asserts that the trial court erred in vacating the default judgment because appellee failed to file his motion to vacate in compliance with Civ.R. 60(B) and appellant properly served appellee with the complaint.

Service of process must satisfy the requirements of Civ.R. 4 *et seq.* Proper service of process is needed before the court can render a valid default judgment. See *Westmoreland v. Valley Homes Mut. Hous. Corp.* (1975), 42 Ohio St.2d 291, 293–294, 71 O.O.2d 262, 263–264, 328 N.E.2d 406, 408–409. A default judgment rendered by a court without proper service on the parties is void. The authority to vacate a void judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts. *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus. The question of whether appellant was properly served involves the court's personal jurisdiction to hear the case; thus, appellee's motion to vacate a judgment for improper service did not need to satisfy the requirements of Civ.R. 60(B). *Schrecengost v. Schnitzler* (Aug. 18, 1995), Trumbull App. No. 94–T–5144, unreported.

Appellant argues that the service was proper because it was addressed to appellee, a judge, directed to his courtroom, and was reasonably calculated to give him notice of the lawsuit. At the hearing, the court considered evidence of

the large number of people working in the justice center, the strong possibility that there was more than one Daniel Corrigan working at the justice center, and the fact, gained through personal experience, that mail was not always delivered efficiently to people in the justice center. In consideration of these factors, the court determined that service upon appellant at the justice center was not reasonably calculated to give him notice of the proceedings.

Under R.C. 5321.18, a landlord is required to provide his tenant with the name and address of the owner of the premises, in this case his own. No evidence in the record, such as a lease or a correspondence between appellant and appellee, indicates whether appellee provided appellant with an address or what that address was. Because it is not apparent from the record, we cannot assume that the address at the justice center was the address given to appellant by appellee. Therefore, we must presume that appellant was aware that he was attempting to serve appellee at his business address.

Civ.R. 4.1 does not specifically provide for or prohibit service upon a defendant at his business address. While there is a presumption of proper service in cases where the Civil Rules on service are followed, the presumption is rebuttable by sufficient evidence that service was not received. *Rafalski v. Oates* (1984), 17 Ohio App.3d 65, 66, 17 OBR 120, 121–122, 477 N.E.2d 1212, 1214. Because of the numerous risks involved with attempting service at a business address, it is not favored in Ohio. *Akron–Canton Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 406, 16 O.O.3d 436, 438, 406 N.E.2d 811, 814. Each case must be examined on its particular facts to determine whether service of process was reasonably calculated to reach the interested party. *Id.* at 407, 16 O.O.3d at 438–439, 406 N.E.2d at 814. The determination by the trial court of the question of sufficiency of service of process is a matter in its sound discretion. *Bell v. Midwestern Educational Serv., Inc.* (1993), 89 Ohio App.3d 193, 203, 624 N.E.2d 196, 202–203. The basic position of Ohio law is that cases should be decided on their merits whenever possible. *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952. Based on the evidence in the record, we cannot hold that the trial court abused its discretion by vacating the default judgment. Appellant's first assignment of error is without merit.

In his second assignment of error, appellant asserts that the trial court, which agreed at the hearing that it had jurisdiction, erred in dismissing the case rather than allowing him to perfect service. Appellee counters that the trial court properly dismissed the case because jurisdiction was proper only in the Western Division. In support of his position, appellee cites several cases discussing territorial jurisdiction.

County court districts were created by R.C. 1907.01. County court districts consist of all territory within a county that is not subject to the territorial jurisdiction of any municipal court. Under R.C. 1907.11, Ashtabula County Court has two part-time judges. Ashtabula County Court, in conformity with 1907.15(A)(1), has been divided by the presiding judge into areas of separate jurisdiction, western and eastern, with designated locations, Jefferson and Geneva, where each judge holds court.

According to the current version of R.C.1907.15(B), which was effective as of July 1, 1997, "[t]he jurisdiction of each county court judge shall be coextensive with the boundaries of the county court district." No Ohio case we can find has interpreted the current version of R.C.1907.15(B). The former version of R.C. 1907.15(B), which is interpreted by the cases cited by appellee, stated that "[t]he jurisdiction of each county court judge shall be limited to his area of jurisdiction." Other cases cited by appellee address situations where there were conflicts between the jurisdictions of different municipal courts or conflicts between the jurisdiction of a municipal court and a county court. The current case presents a question of whether there is a conflict between the jurisdictions of courts located in two areas of separate jurisdiction within the same county court district.

Although R.C.1907.15(A)(1) refers to each judge's area as an area of separate jurisdiction, the language of R.C.1907.15(B) clearly grants each judge jurisdiction to hear cases with territorial jurisdiction throughout the county court district. Furthermore, R.C.1907.13 provides that to be elected, a judge must be a resident of the county court district and need not be a resident of the area of separate jurisdiction to which he may be assigned. Judges are elected by the electors of a county court district, not the electors of each separate area of jurisdiction. Therefore, the Eastern Division's jurisdiction is coextensive with the Western Division's jurisdiction, and the judge in either area has the jurisdiction to hear cases arising in the other's area. Thus the conflict between the Eastern and Western Division is one of venue, not jurisdiction.

Under Civ.R. 3(C)(1), when an action has been commenced in a county, defined by Civ.R. 3(B) as the territorial limits of a court, where there is no proper venue, the proper action for the trial court is to transfer the case to a court of proper venue rather than dismissing it. *Price v. Wheeling Dollar Sav. & Trust Co.* (1983), 9 Ohio App.3d 315, 316, 9 OBR 581, 583, 460 N.E.2d 264, 266. Therefore, it was improper for the trial court to dismiss the complaint, rather than hear it or transfer it, even though the events occurred in the Western Division. At the time the trial court dismissed the complaint, appellant still had time to perfect service within the year required by Civ.R. 3(A). Therefore, the trial court erred by dismissing the case and thus denied appellant substantial justice. In *Scott v. Orlando* (1981), 2 Ohio App.3d 333, 334–335, 2 OBR 377, 378–

379, 442 N.E.2d 96, 97–98, Ohio's Sixth District Court of Appeals held, relying on *Robinson v. Commercial Motor Freight, Inc.* (1963), 174 Ohio St. 498, 23 O.O.2d 139, 190 N.E.2d 441, that "a cause of action will not be barred by failure to obtain service within the prescribed time when such failure is caused by unreasonable delay attributable to the clerk of courts or the court itself." Appellant's ability to serve appellee within a year was defeated by the trial court's erroneous dismissal of the case. This case should be reinstated to the court's docket to allow appellant the opportunity to obtain proper service on appellee. Appellant's second assignment of error has merit.

Based on the foregoing considerations, we hold that the trial court erred by dismissing the case. We therefore affirm in part, and reverse and remand in part.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WILLIAM M. O'NEILL, J., concurs.

CHRISTLEY, P.J., dissents.

CHRISTLEY, Presiding Judge, dissenting.

I respectfully dissent from the opinion of the majority.

With respect to the first assignment of error, neither the majority nor the trial court considered whether appellee had waived any issue of personal jurisdiction. The limited record before this court indicates that the first challenge to the trial court's jurisdiction did not in any way relate to the propriety of service at a business address; nor did it relate to the failure of service at that business address.

The original motion challenging jurisdiction requested the trial court to vacate the judgment based on the single issue of the lack of territorial jurisdiction of the county court. Appellee's sole argument was that "defendant has no residence, place of business, or any other connection with a place within the territorial jurisdiction of this court, pursuant to ORC Section 1907.15." There is not a single allegation in that motion alleging that there was no personal jurisdiction achieved, either due to improper service at appellee's business address or due to a failure of service at appellee's business address.

Civ.R. 12(H)(1) states:

"A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither

made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course."

Civ.R. 12(G) provides:

"A party who makes a motion under this rule must join with it the other motions herein provided for and then available to him. If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter assert by motion or responsive pleading, any of the defenses or objections so omitted, except as provided in subdivision (H) of this rule."

Civ.R. 12(B) provides, "A motion making any of these defenses shall be made before pleading if a further pleading is permitted."

That was not done here. The record indicates that at the beginning of the hearing on appellee's motion, the trial court essentially dispensed with the issue of territorial jurisdiction by indicating that the issue raised was really a matter of venue, although the court did not use that particular word.

Following the trial court's commentary, appellee's attorney made the following statement: "Your Honor, I think that as long as we are here we would like to put on a bit of evidence as to the issue of service." That is first mention of any potential problem with the actual service in this entire proceeding. It was certainly never raised in any pleadings or written motion. As a result, the issue was waived.

In the alternative, even if that defect were somehow overcome, there was no evidence to support a finding of no service.

On direct examination, counsel asked appellee:

"Q. Did you personally receive the service of summons in this case?"

Appellee answered that question in the negative. However, the meaning of his response was clarified when his attorney then asked him:

"Q. Did you become aware of the service of summons prior to the default judgment in this case?"

"A. I believe that I did. I believe that it was buried in the papers down at the Courthouse and right about that time I had some health problems and I wasn't there. So it is vague in my mind as to whether, or when I first saw that pleading because I was hospitalized for—inaudible—, I don't know the exact date that it occurred, it was right about that time. The first time that I became very conscious of this matter was really after judgment was entered and there was a garnishee of my checking account."

Thus, appellant's initial negative response was qualified to mean that no, he did not sign for it, but yes, he did receive it prior to the default hearing.

At that point, appellee's counsel retreated and began to question him about what defenses he would have asserted against the claim. Appellant's counsel objected to the issue of service being raised for the first time, although he did not expressly argue Civ.R. 12 waiver. Appellant's counsel pointed out that the address for the service was, in fact, correct.[1] The questioning further went on to show that someone clearly had signed for the receipt, although appellee denied that *he* had signed for the receipt. At that point, appellant's counsel asked the question:

"Q. Did you say on direct examination Judge that you were in fact aware of the default hearing?"

"A. I believe that I may have been, I am not sure because I was stricken and I went to the hospital at that time and the sequence of events I can't be positive. The only thing that I am, that I can be certain of is that there was some communication between Mr. Thomas and I in which I told him about the damage of the carpet and told him that I would be sending him a check after I went over the thing."

The rest of the dialogue was primarily about the reasons for the withholding of the security deposit and appellee's claim that he did not have an address for Thomas to send him notice regarding the security deposit. Again, on cross-examination, appellant's attorney asked: "At what point did you receive a copy of the pleadings naming you as the defendant in this lawsuit?" The response was: "I really don't know." After some other dialogue, appellant's counsel again asked: "Where did you find the pleadings to this case?" Appellee's answer was: "They were delivered to me at my house while I was convalescing." At the end of the hearing, the trial court stated:

"[T]here is too great a likelihood that it [the pleading] is not going to get where it is supposed to get. Plus he has got an illness there, a signature that I can't make out whose signature that is, I don't think it was covered, but it is not his signature. He is honest enough to say that he doesn't really know if he got it or not, at some point he got it. I am going to grant the 60(B) motion. Judgment is hereby vacated on the basis that there is a failure, that I am not convinced that there was proper service."

The facts do not support that analysis. Even if the issue of waiver of personal jurisdiction did not control the outcome, appellee's own testimony indicated that

---

1. This court takes judicial notice of the fact that Daniel Corrigan's courtroom is listed as 23B in the 1999 Ohio Legal Directory. Thus, it matched the address used for the service of process.

although he himself did not sign the receipt, it got to his courtroom and ultimately got to him, minimally prior to the default hearing.

At the hearing, appellee also raised the defense of excusable neglect due to health problems for the first time. However, even if the motion for vacating the judgment had, in fact, been properly based upon excusable neglect (which it was not), under Civ.R. 60(B)(1) there was absolutely no evidence supporting the timeliness of the motion. Even under the excusable-neglect theory, a motion still has to be made within a reasonable time, and in no case can such a motion be filed more than one year after the judgment was entered. There was no evidence that the motion was made within a reasonable time.

Based on the foregoing analysis, I believe that the trial court was incorrect in vacating the default judgment based on inadequate service of process on appellee. Given my belief that appellant's first assignment of error has merit, his second assignment of error would be moot under App.R. 12(A)(1)(c). Accordingly, I would reverse the judgment of the trial court and remand the matter for that court to reinstate its previously entered default judgment against appellee.