Judgment affirmed in part
and reversed in part,
and cause remanded.

WHITMORE and MOORE, JJ., concur.

━━━━━━━━

**84 LUMBER COMPANY, L.P., Appellant,**

**v.**

**HOUSER et al.; McClain, Appellee.**

[Cite as *84 Lumber Co., L.P. v. Houser*, 188 Ohio App.3d 581, 2010-Ohio-3683.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

Decided Aug. 6, 2010.

---

Brouse & McDowell, Christopher J. Carney, and Christopher F. Carino, for appellant.

Sidney N. Freeman Co., L.P.A. and Sidney N. Freeman, for appellee.

---

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, 84 Lumber Company, L.P., appeals the judgment entered by the Portage County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellee, Chad McClain.

{¶ 2} In December 2007, McClain began working as an outside salesman for 84 Lumber from its Ripley, West Virginia store. When he began his employment, McClain signed a "proposal." According to this document, McClain was to be compensated at a rate of 20 percent of the adjusted gross profit of his sales. For the first six months of his employment, McClain received a guaranteed weekly draw of $865.38. This draw was an advance on his commissions. If his commissions exceeded the advances, McClain was to receive the difference. However, if there was a negative balance at the end of the advance period, it would be forgiven. The agreement provided that the advances would end in June 2008, at which time McClain would be compensated solely based on his commissions.

{¶ 3} In June 2008, McClain signed another "proposal." This proposal again stated that McClain would be compensated at a rate of 20 percent of the adjusted gross profit of his sales. This second proposal provided that McClain would receive a draw "in the amount of $576.92 per week, to be paid on a bi-weekly cycle." This draw was also an advance of his commissions. If his commissions exceeded the advance, McClain would receive the difference. However, contrary to the initial proposal, the second proposal provided, "if there is any negative balance at the end of this advance, it will be paid back." Further, unlike the initial proposal, the second proposal stated, "A no compete agreement must be signed for this draw to be implemented."

{¶ 4} Also in June 2008, McClain signed a "standard confidentiality and noncompetition agreement." Among other matters, this agreement provided that McClain would not, for a period of two years after his employment with 84 Lumber ends, engage in any business similar to 84 Lumber or that is competitive

with 84 Lumber within a 25-mile radius of 84 Lumber's Ripley, West Virginia location.

{¶ 5} In January 2009, McClain left 84 Lumber and began working for Carter Lumber. Upon learning of his employment at Carter Lumber, general counsel for 84 Lumber sent a letter to Carter Lumber informing it about the noncompetition agreement that 84 Lumber had with McClain and asking for an assurance that McClain was not violating that agreement. In response, John Daily, counsel for Carter Lumber, sent a letter to 84 Lumber stating that McClain was working at the Carter Lumber store in Parkersburg, West Virginia, which is more than 25 miles from Ripley, West Virginia.

{¶ 6} 84 Lumber filed the instant action against Carter Lumber, Charles Houser, and McClain.[1] The complaint alleged causes of action for breach of contract, misappropriation of trade secrets, and tortious interference with contract. In addition, the complaint sought an injunction prohibiting future conduct of the defendants.

{¶ 7} McClain filed a motion to dismiss the complaint for lack of jurisdiction.[2] In this motion, pursuant to Civ.R. 12(B)(2), McClain asserted that the trial court did not have personal jurisdiction over him. In addition, pursuant to Civ.R. 12(B)(3), McClain argued that Portage County, Ohio was not the proper venue. 84 Lumber filed a memorandum in opposition to McClain's motion to dismiss. Attached to this memorandum was an affidavit from Peter Martin. Martin states that he is an employee of 84 Lumber and that (1) McClain sold products to customers in Ohio when he worked at 84 Lumber, (2) McClain sells products to Ohio customers in his position with Carter Lumber, (3) McClain specifically sold products to Workman Construction, which is located in Marietta, Ohio, and (4) 84 Lumber was outbid by Carter Lumber for the Workman Construction job.

{¶ 8} McClain filed an "amended motion to dismiss, or motion for summary judgment." Therein, McClain again sought the dismissal of the complaint pursuant to Civ.R. 12(B)(2) and (3). Alternatively, McClain asked the trial court to enter summary judgment in his favor. McClain attached several documents to this combined motion, including a copy of the noncompetition agreement and his affidavit.

{¶ 9} On July 2, 2009, the trial court issued a judgment entry granting McClain's motion for summary judgment. However, that same day, 84 Lumber

---

1. Houser is another former employee of 84 Lumber. Houser and Carter Lumber both filed individual answers to the complaint. 84 Lumber's claims against them proceeded separately in the trial court. Houser and Carter Lumber are not parties to this appeal.

2. We note that McClain has not filed an answer to the complaint.

filed a memorandum in opposition to McClain's motion for summary judgment. 84 Lumber attached several documents to its memorandum, including (1) a copy of the initial proposal signed by McClain in December 2007, (2) a copy of the second proposal signed by McClain in June 2008, (3) a copy of the noncompetition agreement, and (4) an affidavit from Harry Smith. In his affidavit, Smith asserts that he is a private investigator and that he observed McClain at the Carter Lumber store in Ripley, West Virginia. Later that day, Smith asserts that he observed McClain unload lumber from his truck at a residence in Ripley that was having its roof repaired or replaced.

{¶ 10} Since the trial court did not consider its response in opposition to the motion for summary judgment, 84 Lumber filed a motion for reconsideration of the trial court's judgment entry granting McClain's motion for summary judgment. McClain filed a brief in opposition to 84 Lumber's motion for reconsideration. In response to McClain's brief in opposition, 84 Lumber filed a reply in support of its motion for reconsideration. Then, on July 21, 2009, McClain filed a reply in support of his amended motion to dismiss or motion for summary judgment. On July 24, 2009, 84 Lumber filed a surreply in opposition to McClain's amended motion to dismiss or motion for summary judgment. 84 Lumber attached a second affidavit from Martin to this surreply. In his affidavit, Martin states that McClain received highly confidential information when working at 84 Lumber, including 84 Lumber's pricing structure, cost structure, and profit margins. Further, Martin states that "[w]ith intimate knowledge of 84 Lumber's cost structure and profit margins McClain was able to undercut 84 Lumber when bidding on jobs for Carter Lumber."

{¶ 11} On August 6, 2009, the trial court issued a second judgment entry regarding McClain's motion for summary judgment. The trial court indicated that it had mistakenly erred by granting McClain's motion for summary judgment prior to considering 84 Lumber's brief in opposition. Accordingly, the trial court reconsidered the issue in light of all pleadings to date. Thereafter, the trial court again granted McClain's motion for summary judgment.

{¶ 12} In addition, the trial court included language in its entry pursuant to Civ.R. 54(B) indicating that the court intended the entry to be a final, appealable order and that there was no just reason for delay.

{¶ 13} 84 Lumber has filed a timely notice of appeal from the trial court's August 6, 2009 judgment entry. 84 Lumber raises four assignments of error. Its first assignment of error is:

{¶ 14} "The trial court erred in determining that it lacked personal jurisdiction over McClain."

{¶ 15} This court reviews a trial court's determination on whether the court has personal jurisdiction over a party under the de novo standard of review. (Citation omitted.) *Snyder Computer Sys., Inc. v. Stives,* 175 Ohio App.3d 653, 2008-Ohio-1192, 888 N.E.2d 1117, at ¶ 11.

{¶ 16} As this court has previously observed, " 'if a trial court fails to specifically rule on a motion * * *, it is presumed [that] the trial court has overruled that motion.' " *Tenan v. Huston,* 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549, at ¶ 53, quoting *Niepsuj v. Niepsuj,* 9th Dist. No. 21888, 2004-Ohio-4201, 2004 WL 1778883, at ¶ 10. In this matter, the trial court did not specifically rule on McClain's motion to dismiss. While the trial court makes a reference about its inability to enjoin actions that occur in West Virginia and that it has no jurisdiction to address activities that occur in another state, we believe that these comments of the trial court go to the issue of subject-matter jurisdiction, as opposed to personal jurisdiction. Moreover, the fact that the trial court proceeded to the merits of McClain's motion for summary judgment supports the conclusion that the trial court denied his motion to dismiss. Accordingly, we will presume that the trial court denied McClain's motion to dismiss.

{¶ 17} Generally, when considering whether a court has personal jurisdiction over an out-of-state defendant, the court should determine "(1) whether the state's 'long arm' statute and applicable rule of civil procedure confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law under the Fourteenth Amendment of the United States Constitution." *Clark v. Connor* (1998), 82 Ohio St.3d 309, 312, 695 N.E.2d 751, citing *United States Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048. However, we note that personal jurisdiction is a "waivable right," and an individual may consent to a specific court exercising jurisdiction over him or her. *Preferred Capital, Inc. v. Power Engineering Group, Inc.,* 112 Ohio St.3d 429, 2007-Ohio-257, 860 N.E.2d 741, at ¶ 6.

{¶ 18} One way for an individual to waive personal jurisdiction is to voluntarily appear and submit to the jurisdiction of the court. *Snyder Computer Sys., Inc. v. Stives,* 175 Ohio App.3d 653, 2008-Ohio-1192, 888 N.E.2d 1117, at ¶ 14, citing *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156, 11 OBR 471, 464 N.E.2d 538. For example, the Eighth Appellate District has held that a defendant may waive personal jurisdiction by "actively litigating the suit," even in circumstances where the defense of lack of personal jurisdiction has been properly raised. (Citations omitted.) *Am. Diversified Dev., Inc. v. Hilti Constr. Chem., Inc.* (Oct. 29, 1998), 8th Dist. Nos. 73116 and 73168, 1998 WL 767618, *3. The Eighth District noted that the defendant's actions, including actively partici-

pating in motion practice and filing a cross-claim, were sufficient to constitute a waiver of personal jurisdiction. Id.

{¶ 19} In the case sub judice, McClain filed a motion for summary judgment. Therein, McClain specifically requested that the trial court consider the merits of the underlying action against him. The trial court considered the merits of McClain's motion for summary judgment and granted the motion. Accordingly, we conclude that McClain waived personal jurisdiction in this matter by actively participating in the case.

{¶ 20} We note that the Eighth District has held that a defendant who filed a motion for summary judgment did not waive personal jurisdiction. See *Lewis v. Horace Mann Ins. Co.*, 8th Dist. No. 82530, 2003-Ohio-5248, 2003 WL 22251577, at ¶ 13. However, *Lewis* is distinguishable from the case at bar. In *Lewis*, it appears that the only issues raised in the defendant's motion for summary judgment were directly related to the subject of personal jurisdiction. Id. at ¶ 7. However, in the instant action, McClain's motion for summary judgment argued the underlying merits of the case.

{¶ 21} Finally, we note that we are remanding this matter for further proceedings as a result of our analysis of McClain's third and fourth assignments of error. To the extent it could be argued that McClain had not previously waived personal jurisdiction, he has certainly done so at this point. On appeal, McClain specifically argues that he has "abandoned the defense" of lack of jurisdiction, and he agrees that he has, in fact, waived the defense of lack of personal jurisdiction.

{¶ 22} Because we have concluded that McClain has waived the defense of lack of personal jurisdiction, we need not address Ohio's long-arm statute or whether the trial court exercising jurisdiction over McClain violated due process. *Am. Diversified Dev., Inc. v. Hilti Constr. Chem., Inc.*, 1998 WL 767618, *4, fn. 2, citing *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528, fn. 14.

{¶ 23} Because the trial court did not determine that it lacked personal jurisdiction, and for the reasons stated above, 84 Lumber's first assignment of error is without merit.

{¶ 24} 84 Lumber's second assignment of error is:

{¶ 25} "If the trial court concluded properly that it lacked personal jurisdiction over McClain, then it erred in proceeding to decide the merits of 84 Lumber's claims."

{¶ 26} Based on our analysis of 84 Lumber's first assignment of error, its second assignment of error is moot. See App.R. 12(A)(1)(c).

{¶ 27} 84 Lumber's third and fourth assignments of error are:

{¶ 28} "[3.] The trial court erred in concluding that McClain's non-compete agreement was void for lack of consideration.

{¶ 29} "[4.] The trial court erred in granting summary judgment in favor of McClain on 84 Lumber's misappropriation of trade secrets claim."

{¶ 30} Because both these assigned errors concern the merits of the trial court's summary-judgment entry, we will address them in a consolidated fashion.

{¶ 31} In order for a motion for summary judgment to be granted, the moving party must demonstrate the following:

{¶ 32} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." (Citation omitted.) *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 33} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact * * *." Civ.R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 34} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Civ.R. 56(E) provides:

{¶ 35} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 36} Summary judgment is appropriate pursuant to Civ.R. 56(E) if the nonmoving party does not meet this burden.

{¶ 37} Appellate courts review a trial court's entry of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. "*De novo* review means that this court uses the same standard that

the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 38} The noncompetition agreement provided that it was to be governed by Pennsylvania law.

{¶ 39} The trial court concluded that the noncompetition agreement was unenforceable because there was inadequate consideration.

▆▆▆ {¶ 40} " '(I)n order to be enforceable a restrictive covenant must satisfy three requirements: (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory.' " (Citations omitted.) *Davis & Warde, Inc. v. Tripodi* (1992), 420 Pa.Super. 450, 616 A.2d 1384, 1386–1387.

{¶ 41} In analyzing a similar issue under Pennsylvania law, the Eighth Appellate District has quoted the following language:

{¶ 42} " 'When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself. When the restrictive covenant is added to an existing employment relationship, however, it is only enforceable when the employee who restricts himself receives a corresponding benefit or change in status.' " *Cary Corp. v. Linder*, 8th Dist. No. 80589, 2002-Ohio-6483, 2002 WL 31667316, at ¶ 18, quoting *Maintenance Specialties, Inc. v. Gottus* (1974), 455 Pa. 327, 314 A.2d 279, 282.

▆▆ {¶ 43} Because McClain was already employed with 84 Lumber when he signed the noncompetition agreement, he needed to receive an additional benefit in exchange for signing the noncompetition agreement. See *Ruffing v. 84 Lumber Co.* (1991), 410 Pa.Super. 459, 600 A.2d 545, 548. As McClain notes in his appellate brief, Pennsylvania courts have held that continuation of the employment relationship is not sufficient consideration. *Cary Corp. v. Linder*, 2002-Ohio-6483, 2002 WL 31667316, at ¶ 17, citing *George W. Kistler, Inc. v. O'Brien* (1975), 464 Pa. 475, 347 A.2d 311, 316.

{¶ 44} In the case sub judice, it appears undisputed that McClain was to no longer receive a set draw after June 2008. By signing the second proposal, McClain was to receive a weekly advance in the amount of $576.92. Unlike the advance under the first proposal, McClain was obligated to pay back any negative balance at the end of the six-month term. Thus, it could be argued that McClain

did not receive any additional benefit because he was being paid what he would actually be earning as his commission. However, McClain received the benefit of consistent, bi-weekly paychecks. As with many sales jobs, McClain's income from commissions presumably varied from week to week depending on the number of sales he made. Instead of having to rely on the inconsistent income, McClain was given the benefit of consistent paychecks.

{¶ 45} McClain argues and the trial court found that his compensation was actually reduced by signing the second proposal. We disagree with this conclusion. When the term set forth in the first proposal expired, McClain was to receive *no* weekly draw. His income was to be only his commission. Even though the draw in the form of an advance against his commission was less than it had been in the initial six-month term, it was more than zero, which is the amount of a weekly draw that McClain would have received if he had not signed the second proposal.

{¶ 46} Moreover, we note that the language of the second proposal reveals that 84 Lumber would agree to offer McClain an additional period of weekly draws in the form of advances on his commission only if he signed the noncompetition agreement. The second proposal stated, "A no compete agreement must be signed for this draw to be implemented." This language clearly evinces the parties' intent that the second proposal was conditional on the noncompetition agreement. If McClain did not want to sign the noncompetition agreement, he could have continued to work without any draw under the December 11, 2007 initial agreement. That agreement stated: "Beginning on 6–14–08 the advances will end and earnings will be determined based on the commission structure outlined above." Thus, it appears that McClain had the choice to take the draw with the noncompete provision, or take no draw and sign no noncompete agreement.

{¶ 47} In his affidavit, McClain states he "was told by 84 Lumber either he sign the McClain Noncompetition Agreement or his contract of employment would expire, without renewal." If his assertion is accepted as true by a trier of fact, McClain's contention that there was inadequate consideration for the noncompetition agreement may have merit. However, we note there was conflicting evidence submitted on this issue. In addition to the language of the proposals themselves, which, as noted above, suggest that the execution of the noncompetition agreement was voluntary, 84 Lumber submitted the second affidavit of Martin. Therein, Martin states, "*As an accommodation to McClain,* 84 Lumber agreed to pay McClain a reduced draw of $576.92 for another six months until December 13, 2008, conditioned upon McClain signing a the [sic] Confidentiality and Noncompetition Agreement." (Emphasis added.) For the purposes of a summary-judgment exercise, 84 Lumber, as the nonmoving party,

was entitled to have all factual issues construed most strongly in its favor. See Civ.R. 56(C). Accordingly, we conclude that there is a genuine issue of material fact that remains to be determined as to whether the noncompetition agreement was supported by sufficient consideration. Thus, McClain is not entitled to judgment as a matter of law, and the trial court erred in granting his motion for summary judgment on this issue.

{¶ 48} McClain does not challenge the noncompetition agreement on the grounds that it is not limited in time or duration. We note that the agreement precluded certain activities for a period of two years and within a 25–mile radius of the 84 Lumber facility in Ripley, West Virginia. McClain is not precluded from working for Carter Lumber or any other competitor; he just cannot do so in the proscribed territory. For purposes of summary judgment, we cannot say that these limitations were unreasonable as a matter of law.

{¶ 49} Likewise, McClain does not specifically challenge the fact that the noncompetition agreement was breached. We note that Smith stated in his affidavit that McClain worked out of the Carter Lumber store in Ripley, West Virginia when he was involved in a project in which he delivered lumber to a local residence in Ripley. Thus, 84 Lumber presented sufficient evidence that, when viewed most strongly in favor of 84 Lumber, created a genuine issue of material fact as to whether McClain breached the noncompetition agreement.

{¶ 50} Next, we address the trial court's conclusion that McClain was entitled to judgment as a matter of law on 84 Lumber's misappropriation-of-trade-secrets claim.

{¶ 51} In its complaint, 84 Lumber claims that McClain misappropriated its trade secrets in violation of R.C. 1333.61 et seq., which is Ohio's codification of the Uniform Trade Secrets Act. We note that the noncompetition agreement addresses trade secrets. Again, the noncompetition agreement provides that the agreement shall be governed by Pennsylvania law. We acknowledge that Pennsylvania has also adopted the Uniform Trade Secrets Act. See 12 Pa.Consol.Stat. 5301 and 5302 et seq. Thus, the result of our analysis would be the same whether Ohio or Pennsylvania law is applied. Accordingly, for ease of discussion, and the fact that 84 Lumber advanced this claim under R.C. 1333.61, we will address this assigned error under the Ohio statute.

{¶ 52} R.C. 1333.61 provides:

{¶ 53} "(B) 'Misappropriation' means any of the following:

{¶ 54} "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

{¶ 55} "(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

{¶ 56} " * * *

{¶ 57} "(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

{¶ 58} " * * *

{¶ 59} "(D) 'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

{¶ 60} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

{¶ 61} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

{¶ 62} The Supreme Court of Ohio has held:

{¶ 63} "[W]e established a six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D): '(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.'" *Al Minor & Assocs. v. Martin,* 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850, at ¶ 16, quoting *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 524–525, 687 N.E.2d 661.

{¶ 64} "An entity claiming trade secret status bears the burden of identifying and demonstrating that the information is protected under this statute and, furthermore, must demonstrate that it has actively sought to maintain that information's secrecy." *Cary Corp. v. Linder,* 2002-Ohio-6483, 2002 WL 31667316, at ¶ 23, citing *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 181, 707 N.E.2d 853.

{¶ 65} The trial court held, "84 Lumber offers no Civ.R. 56(C) [evidence] tending to establish the requisite efforts to maintain the secrecy of this information." However, in his second affidavit, Martin states that 84 Lumber treats its profit margins, pricing structure, and cost structure as "highly confidential" and password-protects this information. Thus, for the purposes of summary judgment, 84 Lumber presented sufficient evidence to create a genuine issue of material fact on the issue of whether it took measures to protect its confidential information.

{¶ 66} Further, 84 Lumber presented evidence suggesting that McClain misappropriated its trade secrets. In his first affidavit, Martin states, "With intimate knowledge of 84 Lumber's cost structure and profit margins McClain is able to undercut 84 Lumber when bidding on jobs for Carter Lumber."

{¶ 67} In addition, in his first affidavit, Martin states that McClain, while working for Carter Lumber, outbid 84 Lumber on a job for Workman Construction in Marietta, Ohio. The trial court acknowledged this evidence; however, the trial court concluded that 84 Lumber did not offer any evidence that this Workman Construction job was within the 25–mile radius set forth in the noncompetition agreement. That is immaterial. It is important to note that 84 Lumber's misappropriation-of-trade-secrets claim was based on alleged violations of R.C. 1333.61 et seq. It was not based on an alleged breach of the noncompetition agreement. There is no temporal or territorial restriction in R.C. 1333.61 et seq. Accordingly, the fact that this incident may have occurred outside of the 25–mile radius of Ripley, West Virginia does not negate the import of this evidence.

{¶ 68} We note that the Eighth District concluded that summary judgment was appropriate in favor of a defendant in a trade-secrets case. *Cary Corp. v. Linder*, 2002-Ohio-6483, 2002 WL 31667316, at ¶ 29. However, it is important to note that there was no evidence presented that the defendant in that case possessed the knowledge relating to calculating the plaintiff's profit. Id. at ¶ 26. In the case sub judice, Martin states that McClain possessed knowledge relating to 84 Lumber's profit margins and pricing structure.

{¶ 69} Further, we are not aware of any case law holding that additional consideration is necessary to bind a confidentiality agreement. Also, while there was a written confidentiality agreement in this case, the obligations imposed by law to maintain the confidentiality of trade secrets exist regardless of whether there is any written agreement.

{¶ 70} The evidence in the record, when viewed most favorably to 84 Lumber, was sufficient to create a genuine issue of material fact as to whether McClain misappropriated trade secrets of 84 Lumber. Accordingly, the trial court erred by entering summary judgment in favor of McClain on this issue.

{¶ 71} 84 Lumber's third and fourth assignments of error have merit to the extent indicated.

{¶ 72} The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

RICE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 73} I respectfully dissent from the majority's decision to reverse the grant of summary judgment in favor of defendant-appellee, Chad McClain.

{¶ 74} With respect to plaintiff-appellant, 84 Lumber Company's, claim that McClain breached the noncompetition agreement, the majority finds that this agreement was supported by adequate consideration.

{¶ 75} Under Pennsylvania law, "a restrictive covenant is enforceable if supported by new consideration, either in the form of an initial employment contract or a change in the conditions of employment." *Maintenance Specialties, Inc. v. Gottus* (1974) 455 Pa. 327, 330, 314 A.2d 279.

{¶ 76} The majority correctly determines that the biweekly advance on future commissions that McClain would receive in exchange for executing the agreement constituted a tangible benefit. Pennsylvania case law, however, demonstrates that, as a matter of law, a more substantial benefit than a temporary advance in pay is required in order to render a restrictive covenant enforceable.

{¶ 77} For example, nominal consideration such as $1.00 would be insufficient to support a restrictive covenant. *George W. Kistler, Inc. v. O'Brien* (1975), 464 Pa. 475, 485, 347 A.2d 311, fn. 5. Provisions requiring the employer to give the employee several weeks' notice in the event of termination have been found insufficient to support a restrictive covenant. *Maintenance Specialties*, 455 Pa. at 330, 314 A.2d 279, fn. 1; *Capital Bakers, Inc. v. Townsend* (1967), 426 Pa. 188, 191, 231 A.2d 292. The change from "at will" employment to a week-to-week term of employment was insufficient to support a restrictive covenant. *Markson Bros. v. Redick* (1949), 164 Pa.Super. 499, 505, 66 A.2d 218.

{¶ 78} In contrast, an employee receiving a commission-based sales position in lieu of a salary-based service position constituted sufficient consideration to support a restrictive covenant. *M.S. Jacobs & Assocs., Inc. v. Duffley* (1973), 452

Pa. 143, 146–147, 303 A.2d 921. The change from an at-will/independent contractor to a regular employee constituted sufficient consideration to support a restrictive covenant. *Pennsylvania Funds Corp. v. Vogel* (1960), 399 Pa. 1, 6, 159 A.2d 472. Becoming a shareholder in a company was sufficient consideration to support a restrictive covenant. *Wainright's Travel Serv., Inc. v. Schmolk* (1985), 347 Pa.Super. 199, 204, 500 A.2d 476.

{¶ 79} As the Pennsylvania Supreme Court has emphasized, the benefit to the employee entering a restrictive covenant after the initial employment must constitute a change in the employment status. *Maintenance Specialties,* 455 Pa. at 330, 314 A.2d 279. The advance on future commissions in the present case is only a temporary accommodation, not a change in McClain's employment status. Accordingly, it is insufficient consideration to support the noncompetition agreement as a matter of law.

{¶ 80} With respect to 84 Lumber's claim that McClain violated Ohio's Uniform Trade Secrets Act, I agree with the trial court that it offered "no Civ.R. 56(C) evidence supporting McClain's improper appropriation of trade secrets, whether customer lists, customer specific needs, product pricing, or other proprietary information." The single instance of Carter Lumber outbidding 84 Lumber for a job, without more, does not create a reasonable inference of misappropriation.

{¶ 81} For the foregoing reasons, I respectfully dissent and would affirm the decision of the trial court.