[Cite as *Ashtabula v. Holman*, 2020-Ohio-2892.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF ASHTABULA, OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2019-A-0060** |
| ADAM HOLMAN, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Ashtabula Municipal Court, Case No. 2019 CVH 00324.

Judgment: Affirmed.

*Michael Franklin*, Ashtabula City Solicitor, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellant).

*Jason L. Carter*, 16781 Chagrin Boulevard, Suite 287, Shaker Heights, OH 44120 (For Defendants-Appellees).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, the City of Ashtabula ("the City"), appeals a judgment in the Ashtabula Municipal Court dismissing its complaint for declaratory judgment, interpleader, and other relief, against appellees, Adam and Betty Holman ("the Holmans"). We affirm the trial court's judgment.

{¶2} The following facts contained in the complaint filed by the City are largely undisputed. This matter began with the execution of a search warrant by the Ashtabula

City Police Division at the Holman residence on February 9, 2018. The warrant authorized a search of the residence for the following:

> **For certain evidence to wit:** Physical documents and virtual electronic documents which may be found in computers, cell phones, electronic storage media, and in locked containers such as filing cabinets, strong boxes, and safes to include but not limited to U.S. Mail, Bureau of Motor Vehicles documents, financial documents and election documents which are believed to be physical evidence of a crime or crimes, to wit: Election Falsification as defined by RC 3599.36.

{¶3} Pursuant to a search of the residence, police recovered approximately $8,450.00 in U.S. currency (the "Seized Funds"). Based on multiple eyewitness reports and corroborating details, police believed the Seized Funds had been stolen on or about December 1, 2017, from a residence registered in the name of Antonietta Muto, deceased. The Seized Funds were confiscated by police and held pursuant to an ongoing investigation into the alleged theft at the Muto property.

{¶4} On April 9, 2019, the Holmans filed a motion seeking the return of the Seized Funds. The motion was held in abeyance following the City's filing of a complaint for declaratory judgment, interpleader, and further relief on April 10, 2019. The City's complaint identified the Holmans, Henry Muto, and the unknown heirs of Antonietta Muto (the "Unknown Heirs") as possible claimants of the Seized Funds. The City requested an order of interpleader requiring the potential claimants to file an answer asserting their rights to ownership.

{¶5} The complaint was served via certified mail on the Holmans, Henry Muto, and an attorney on behalf of the Unknown Heirs. Each certified mailing was returned signed in April 2019. The Holmans filed a motion to dismiss for failure to state a claim upon which relief can be granted on May 3, 2019, arguing that interpleader was

2

inappropriate in the present matter because (1) there was no controversy between the city solicitor and the Holmans; (2) the alleged controversy was not justiciable; and (3) the City had not alleged that speedy relief was necessary to preserve the rights of the parties. No other party responded to the complaint.

{¶6} On May 29, 2019, the trial court held a default hearing. Only the Holmans, with counsel, attended the hearing. Based on this hearing, the magistrate made two findings of fact:

> [1.] Purpose of hearing was to determine whether Henry Muto or unknown heirs would file answer[.] No one appeared on behalf of Henry Muto or unknown heirs.

> [2.] No answer to date has been filed by Henry Muto or heirs. At least [the] file does not reflect any.

{¶7} On June 25, 2019, the trial court issued a judgment entry declaring that Henry Muto and the Unknown Heirs had forfeited any claim to the Seized Funds due to their failure to respond. Further, the trial court found that the Seized Funds were confiscated outside the scope of the search warrant. As a result of the unlawful seizure, the trial court ordered the funds be returned to the Holmans, essentially dismissing the City's claims.

{¶8} The same day, the City filed a motion to vacate the judgment entry of the trial court. For cause, the City claimed that (1) the Unknown Heirs had not been properly served because the attorney who received service on behalf of the Unknown Heirs did not represent the heirs; (2) the court committed plain error by making findings of fact at the hearing; and (3) the court erred in confusing the legality of the seizure with the question of ownership.

3

{¶9} Regarding the service issue, the City attached the following email correspondence received by the City two minutes before the default hearing on May 29, 2019:

> Solicitor Franklin,
>
> I have been in receipt of your court pleadings, motions, etc. I used to represent the Muto heirs; however, I do not represent any of the Muto Heirs, at this time, as it relates to the above-captioned case. I know there is a Default Hearing today that I'm not attending. Should you need further assistance in locating sending [sic] correspondence directly to the heirs please let me know.

An affidavit signed by counsel for the City was also provided, confirming receipt of the email and the City's intent to file a motion for service by publication.

{¶10} The trial court denied the motion to vacate without a hearing on July 5, 2019. The court found that service perfected on the attorney on April 13, 2019, was compliant with Civil Rule 4.1(A)(1)(a); the City failed to object to the magistrate's findings of fact; the Seized Funds were taken outside the scope of the search warrant; and there were no competing claimants for the Seized Funds—which were confiscated over one year before the present matter with no criminal charges having ever been filed against the Holmans.

{¶11} The City filed a timely notice of appeal challenging both the dismissal and the denial of the motion to vacate, raising three assignments of error for our review. The City's first and second assignments of error state:

> [1.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING DEFAULT JUDGMENT AS TO THE CLAIMS OF APPELLANT WHEN THE APPELLANT WAS THE PLAINTIFF, HAD FILED A COMPLAINT, IN CONFORMITY WITH THE OHIO RULES OF CIVIL PROCEDURE, AND WAS NOT IN DEFAULT OF ANSWER OR OTHER RESPONSIVE PLEADING.

4

[2.] THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING <u>DE FACTO</u> JUDGMENT ON THE PLEADINGS TO APPELLEE, WHEN THE APPELLANT HAD FILED A COMPLAINT STATING A VIABLE CLAIM FOR RELIEF AND, CONSTRUING THE PLEADINGS IN A LIGHT MOST FAVORABLE TO THE APPELLANT, IT COULD NOT BE SAID APPELLEES WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

{¶12} The City argues the trial court erred in dismissing its claims and entering a de facto judgment on the pleadings in favor of the Holmans.

{¶13} Ohio Civil Rule 22 governs interpleader actions in Ohio, and states:

> *Persons having claims against the plaintiff* may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. * * *
>
> In such an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party may deposit all or any part of such sum or thing with the court upon notice to every other party and leave of court. The court may make an order for the safekeeping, payment or disposition of such sum or thing.

Civ.R. 22 (emphasis added).

{¶14} Where there is nothing about property seized from a party that would make the property illegal to possess, and there are no competing claims to the property at the time in which it would have been appropriate to return the property to the party, the trial court lacks jurisdiction over an interpleader action. *See Crawford Cty. Sheriff's Dept. v. Sears Roebuck & Co.*, 3d Dist. Crawford No. 3-04-05, 2004-Ohio-3898, ¶29-30.

{¶15} In *Crawford*, the Third Appellate District Court held that a police department that seized property from a party could not maintain an action for interpleader simply to compel claimants with a potential interest in the property to litigate the matter. *Id.* at ¶22. In reaching that conclusion, the Third District contrasted the

5

facts in *Crawford* with the case of *Hoffhines v. Smith*, 10th Dist. Franklin No. 88AP-839, 1989 WL 52945 (May 18, 1989). There, a vehicle was seized and impounded by law enforcement, although criminal charges were never filed against the party. *Id.* at *1. The court held that the vehicle, which included parts from other vehicles, created an illegal status in the property and the party was not entitled to repossession of the entire vehicle. *Id.* at *3. The Tenth Appellate District held that despite the fact criminal charges were not filed against Hoffhines, the entire vehicle could not be returned to him, which necessitated the interpleader action. *Id.* at *4.

{¶16} The matter sub judice is more apposite to *Crawford*. Unlike *Hoffhines*, the *Crawford* matter involved a situation where there was no inherent illegality to the property and no competing interests in the property. Likewise, here, while there are allegations of illegality made by the City, there is no inherent illegality in the possession of the Seized Funds. Regardless of whether the Seized Funds possess characteristics of allegedly stolen money, that alone does not rise to the level of creating an illegal status.

{¶17} Further, and more importantly, there are no competing interests in the property. Henry Muto is the only heir to Antonietta Muto's property identified by the City. He was duly served in accordance with the Rules of Civil Procedure, and he failed to make a claim. In addition, the Unknown Heirs are neither an identified party, nor have they asserted a claim to the Seized Funds. Under the plain language of Civil Rule 22, the Unknown Heirs cannot be considered "[p]ersons having claims against the plaintiff."

6

{¶18} For these reasons, it was appropriate for the trial court to dismiss the action. The City's first and second assignments of error have no merit.

{¶19} The City's third assignment of error states:

[3.] THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY FAILING TO VACATE A FINAL JUDGMENT WHEN TIMELY NOTIFIED OF A FAILURE OF SERVICE ON PARTIES TO THE LITIGATION.

{¶20} The City argues the trial court erred and abused its discretion when it denied the motion to vacate because the court did not have jurisdiction over the Unknown Heirs.

{¶21} "'In Ohio, it is well-established that before a trial court can enter a judgment against a defendant, the court must first have personal jurisdiction over the defendant.'" *Sweeney v. Smythe, Cramer Co.*, 11th Dist. Geauga No. 2002-G-2422, 2003-Ohio-4032, ¶12, quoting *Old Meadow Farm Co. v. Petrowski*, 11th Dist. Geauga No. 2000-G-2265, 2001 WL 209066, *2 (Mar. 2, 2001). "Therefore, a default judgment rendered by a court without personal jurisdiction over the defendant is void." *Id.*, citing *Thomas v. Corrigan*, 135 Ohio App.3d 340, 343 (11th Dist. 1999).

{¶22} "That being said, '[t]he authority to vacate a void judgment is not derived from Civ.R. 60(B), but rather constitutes an inherent power possessed by Ohio courts.'" *Id.* at ¶13, quoting *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus. "In other words, because a court has the inherent power to vacate a void judgment, a party who claims that the court lacked personal jurisdiction as a result of a deficiency in service of process is entitled to have the judgment vacated and need not satisfy the requirements of Civ.R. 60(B)." *Id.* (citations omitted).

7

{¶23} "'While there is a presumption of proper service in cases where the Civil Rules on service are followed, the presumption is rebuttable by sufficient evidence that service was not received.'" *Id.* at ¶15, quoting *Thomas*, *supra*, at 344.

{¶24} "'An appellate court reviews the denial of a motion to vacate under an abuse of discretion standard.'" *Dilley v. Dilley*, 11th Dist. Geauga No. 2017-G-0115, 2017-Ohio-8439, ¶15, quoting *Famageltto v. Telerico*, 11th Dist. Portage No. 2012-P-0146, 2013-Ohio-3666, ¶10. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). However, "[t]his court reviews a trial court's determination on whether the court has personal jurisdiction over a party under the de novo standard of review." *84 Lumber Co., L.P. v. Houser*, 188 Ohio App.3d 581, 2010-Ohio-3683, ¶15 (11th Dist.), quoting *Snyder Computer Sys., Inc. v. Stives*, 175 Ohio App.3d 653, 2008-Ohio-1192, ¶11 (7th Dist.).

{¶25} As stated above, Civ.R. 22, governing interpleader actions, requires "persons having claims against the plaintiff" to be joined as defendants.

{¶26} Having carefully considered the record, this court concludes that while the trial court erred as a matter of law in stating that service on the Unknown Heirs was perfected through the certified mailing to the attorney no longer representing the Unknown Heirs on April 13, 2019, this error was harmless. The Unknown Heirs were not a proper party for an interpleader action, as discussed above in the City's first and second assignments of error, because they do not meet the definition of "persons having claims against the plaintiff" required by Civ.R. 22.

8

{¶27} Therefore, service upon the Unknown Heirs was not necessary, and the trial court did not need to obtain personal jurisdiction over the Unknown Heirs before dismissing the matter.

{¶28} The City's third assignment of error has no merit.

{¶29} The judgment of the Ashtabula Municipal Court is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.